IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32358-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIGUEL ANGEL CASTILLO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Miguel Castillo convinced the trial court to dismiss his adult

prosecution for indecent liberties due to "delay" in the processing of this charge in

juvenile court allegedly occurring *after* charges had been filed there. We reject his novel

argument and reverse the trial court's dismissal of this action.

FACTS[1]

Mr. Castillo, born on February 17, 1994, was charged in the juvenile division of

Franklin County Superior Court in late spring 2010[2] with one count of indecent liberties

allegedly occurring during the first eight months of 2005. The charge never proceeded to

---

[1] Most of these facts are drawn from the unchallenged findings of fact entered in support of the order of dismissal. Clerk's Papers (CP) at 6-7.

[2] The juvenile court charging date is referred to only as "2010" in the trial court's findings of fact. The appellant's brief alleges it was May 25, 2010, while the respondent's brief alleges the date was June 2, 2010.

disposition and eventually was dismissed on Mr. Castillo's 18th birthday. However, the

procedural history of that case is critical to this action and needs some discussion.

The named victim, B.V., was born in August 1992. On November 28, 2009, she

reported to police that Mr. Castillo had sexually assaulted her over the eight month

charging period.[3] The detective spoke to Mr. Castillo two days later. Our records do not

reflect whether he made any statements to the detective. Two days later, the detective

referred the file to the Franklin County Prosecutor's Office. A counselor at Kid's Haven,

where B.V. then was staying, discussed the case with her on April 15, 2010, and

confirmed that she would cooperate with the prosecution. However, sometime after that

interview, B.V. became uncooperative. Meanwhile, the prosecutor filed the charge

related to B.V.

It appears that Mr. Castillo was arraigned in juvenile court and obtained counsel,

although again the findings reflect only that he had an attorney representing him in that

court. B.V. declined to appear at the prosecutor's office for a defense interview. A later

---

[3] Although not part of the trial court's findings of fact, the prosecutor's briefing to the trial court and this court alleges that the disclosure was made during an interview concerning Mr. Castillo's alleged abuse of B.V.'s two sisters. The record in this case does not indicate whether charges were filed relating to the two sisters, nor does it show any disposition of those allegations.

2

attempt to conduct a deposition also failed. The findings also reflect that Mr. Castillo lost contact with his counsel.[4] A bench warrant issued for his arrest on October 6, 2011.

Charges were dismissed without prejudice four months later when Mr. Castillo turned 18 on February 17, 2012. Presumably the bench warrant was recalled when charges were dismissed, although the record likewise does not reflect whether that was the case or not. Meanwhile, the prosecutor was able to locate B.V. and interviewed her on June 17, 2013. She again agreed to cooperate and the prosecutor filed one count of indecent liberties, again covering the same January 1, 2005 to August 31, 2005 time period, in adult court on August 5, 2013.

It appears Mr. Castillo was arraigned in adult court. Represented by counsel, he later moved to dismiss the charges pursuant to CrR 8.3(b). He argued that dismissal was appropriate due to governmental mismanagement in not bringing the case to trial before his 18th birthday and that it was fundamentally unfair to prosecute someone as an adult for actions committed while still a "preadolescent." Report of Proceedings (RP) at 7. As prejudice, he claimed the loss of juvenile court jurisdiction.

The trial court agreed that Mr. Castillo was prejudiced by the loss of jurisdiction and that the case should have proceeded to trial in juvenile court on the basis of B.V.'s

---

[4] The prosecutor alleged during argument in adult court that Mr. Castillo failed to appear at several court hearings before the juvenile court judge issued the bench warrant. Report of Proceedings (RP) at 6, 7. Respondent agrees that he failed to appear for a pretrial hearing. Br. of Resp't at 3. The findings do not address these contentions.

statements to the detective and the counselor. The court also concluded that "the delay in charging was neither deliberate nor negligent." RP at 8; CP at 8. The charge was dismissed.

The State timely appealed to this court.

## ANALYSIS

The issue presented by Mr. Castillo's hybrid argument is whether the court erred in granting the motion to dismiss under CrR 8.3(b). It was not appropriate to apply due process charging delay standards to the juvenile court's management of its then-pending case. The filing of charges in juvenile court made this a speedy trial case rather than a charging delay case. The court erred in mixing the concepts.[5]

---

[5] The dissent accuses the majority of engaging "in fact finding unbecoming an appeals court," but never attempts to explain what facts this court supposedly found. Instead, rather than presume that defense counsel competently marshalled the facts necessary to make his argument, the dissent (despite no party asking for this action) would remand for additional fact-finding in case there are facts that would support Mr. Castillo's theory. There is no reason to give him a second bite at this apple when his legal theory, a mishmash doctrinally at odds with its Sixth Amendment, Fourteenth Amendment, and CrR 8.3(b) underpinnings, would not support relief. If the facts were as the dissent imagines them (a juvenile hearing repeatedly delayed without proper purpose), the remedy was a motion to dismiss in the juvenile court on Sixth Amendment or JuCR 7.8 grounds. The opportunity to make such a motion (which may have been made for all this record shows us) has long since passed.

The only two salient *facts* before this court that we rely on are: (1) juvenile court jurisdiction was lost on Mr. Castillo's 18th birthday, and (2) the juvenile case went to bench warrant status four months earlier due to Mr. Castillo losing contact with his attorney and then failing to appear in court. The *conclusion* to be drawn from those facts is that they do not support his claim for relief under CrR 8.3(b) or under the Sixth and Fourteenth Amendments to the United States Constitution.

4

Given the nature of the argument, several well developed doctrines have play in this case. CrR 8.3(b) empowers a court to dismiss an action when, "due to arbitrary action or governmental misconduct," "there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." The trial court's rulings under CrR 8.3(b) are reviewed for abuse of discretion; the extraordinary remedy of dismissal is only appropriate when there has been such prejudice that no other action would ensure a fair trial. *State v. Garza*, 99 Wn. App. 291, 295, 994 P.2d 868 (2000). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

To prevail on a claim that delay in prosecution which results in the loss of juvenile jurisdiction violates due process:

> (1) the defendant must show prejudice resulting from the delay; (2) the court must consider the reasons for the delay; and (3) if the State can justify the delay, the court will engage in balancing the State's interest against the prejudice to the accused.

*State v. Warner*, 125 Wn.2d 876, 889, 889 P.2d 479 (1995) (citing *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990)). There is no constitutional right to be tried as a juvenile. *Warner*, 125 Wn.2d at 889. However, because a delay that results in loss of juvenile jurisdiction deprives a defendant of certain statutory benefits, loss of jurisdiction establishes the prejudice element of the due process test. *Id.* at 889-890.

5

The timeliness with which a charged case is brought to resolution at trial is governed both by the constitution and court rule. The Sixth Amendment and article I, section 22 of the Washington Constitution each provide a right to a speedy trial; the rights provided by the two constitutions are equivalent. *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo an allegation that these rights have been violated. *Id.* at 280. Because some delay is both necessary and inevitable, the appellant bears the burden of demonstrating that the delay between the initial accusation and the trial was unreasonable and created a "presumptively prejudicial" delay. *Id.* at 283. Once this showing is made, courts must consider several nonexclusive factors in order to determine whether the constitutional speedy trial rights were violated. *Id.* These factors include the length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay caused prejudice. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). None of the *Barker* factors are either sufficient or necessary to demonstrate a constitutional violation. *Iniguez*, 167 Wn.2d at 283.

A delay of less than 8-12 months will seldom even present a constitutional question. *Id.* at 291-293. If presumptive prejudice is not established, there is no need to even conduct an analysis of the other factors. *Id.* at 282-283. If it is established, then the court must consider the *Barker* factors and balance the "totality of the circumstances." *Id.* at 292-295.

In contrast to the constitutional speedy trial rule, the court rules require no balancing of the facts, but simply a determination whether the complex rules were

6

No. 32358-7-III
*State v. Castillo*

complied with or not by both sides.[6] JuCR 7.8 is the time for trial rule in juvenile court. Except for nomenclature and procedural differences required by juvenile court practices, the rule is substantially identical to CrR 3.3 and CrRLJ 3.3 which govern the time for trial in adult court. All three rules have the same remedy—dismissal with prejudice. In juvenile court, JuCR 7.8(h) speaks to that point:

> A charge not brought to adjudicatory hearing within the time limit determined under this rule shall be dismissed with prejudice. . . . No case shall be dismissed for time-to-hearing reasons except as expressly required by this rule, a statute, or the state or federal constitution.

*Accord* CrR 3.3(h); CrRLJ 3.3(h). The failure to assert a time for trial argument to the trial court waives any rule-based claim on appeal. *E.g., State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985) (CrR 3.3); *State v. MacNeven*, 173 Wn. App. 265, 268, 293 P.3d 1241 (2013).

It is with this background in mind that we turn to the argument presented in this appeal. Reduced to its essence, Mr. Castillo wants to gain the benefits of a speedy trial

---

[6] The "commencement date" is the event—typically the arraignment—that begins the time for trial period. JuCR 7.8(c). The time period is 30 days for juveniles who are detained in custody and 60 days for those who are not detained. JuCR 7.8(b)(1)(i), (2)(i). Many events, such as continuances, will extend the time for trial period by excluding various time periods from the 30/60 day period. *See* JuCR 7.8(e). Other events, such as failure to appear in court or waiver of the time for trial period, reset the time period by creating a new commencement date. *See* JuCR 7.8(c)(2). The failure to object to a hearing date in a timely fashion waives a violation of the rule. JuCR 7.8(d). Even when a hearing date has passed, it is possible to revive it with a timely request to "cure" the violation. JuCR 7.8(g).

violation without proving that one occurred. Instead, he turns to the only prejudice arguably demonstrated by the record—the loss of juvenile court jurisdiction—and attempts to prove that it occurred as a result of the way his juvenile case was conducted. Although a creative argument, it fails here.

Mr. Castillo agrees with the prosecutor that there was no due process violation because the case was charged well before his 18th birthday. *See* Br. of Resp't at 8. Under similar facts, the Washington Supreme Court recently came to the same conclusion when it affirmed, on this point, a decision by Division Two. *State v. Maynard*, 183 Wn.2d 253, 260, 351 P.3d 159 (2015) ("We agree with the Court of Appeals that preaccusatorial delay does not cause the loss of jurisdiction when the State files charges before juvenile jurisdiction expires and the defendant has an opportunity to extend it."). Accordingly, there was no due process violation in this case.

Nonetheless, Mr. Castillo argues that the due process concept of prejudice arising from preaccusatorial delay also establishes prejudice under CrR 8.3(b). This claim fails factually and legally in this instance. The claim fails factually because juvenile jurisdiction was not lost due to any actions of the State. It was lost because Mr. Castillo failed to appear in court and subsequently turned 18, causing the jurisdiction of the juvenile court to end. *See* RCW 13.40.020(15), (16); RCW 13.40.300. *Accord*, *Maynard*, *Id.* at 260 ("Maynard's attorney did not move to extend jurisdiction at that time

8

or at any time before he turned 18, but she could have. This failure and the consequential loss of jurisdiction was not the result of the State's actions.").

The claim fails legally because the due process concept of prejudice is different from the concept defined under CrR 8.3(b), which is the rule relied on by Mr. Castillo and the trial court. As defined there, government mismanagement of a case will justify dismissal "when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Loss of juvenile court jurisdiction does not prejudice the right to a fair trial.[7] The prejudice arising from loss of juvenile court jurisdiction is the loss of the rehabilitative model of juvenile justice and the accompanying lesser punishment usually (although not always) attached to a juvenile adjudication. *State v. Dixon*, 114 Wn.2d 857, 860-861, 792 P.2d 137 (1990). Those are concerns of due process and sentencing[8] rather than concerns about the fairness of trial proceedings. *Id.* at 860. They do not establish prejudice to the right to a fair trial within the meaning of CrR 8.3(b).

---

[7] Indeed, the adult defendant has a significant constitutional right—the right to a jury trial—that is unavailable to the accused juvenile offender. It is for this reason that there is no prejudice from the denial of a request to waive the right to a jury trial. *E.g.,* *State v. McKague*, 159 Wn. App. 489, 500-501, 246 P.3d 558 (2011).

[8] Should he be convicted in adult court for a crime committed when he was 11, Mr. Castillo's remedy is an exceptional sentence or some other form of lenient treatment. *Cf. State v. Posey*, 174 Wn.2d 131, 272 P.3d 840 (2012) (court sentenced adult consistent with the sentence he would have received as a juvenile for crime committed while juvenile).

The actual reason Mr. Castillo's case was not resolved in juvenile court was that he aged out of that court despite being charged roughly 20 months before he turned 18. This informs us that his actual problem was a trial timeliness issue, a problem that is governed either by our constitutions or the court rules. However, the time for trial rule is not implicated here because, unless JuCR 7.8 was raised in the juvenile proceedings— and there is no contention that was the case—any claim under the rule has long been waived.[9] *Smith*, 104 Wn.2d at 508.

That leaves this case with the constitutional speedy trial protections. Even if this argument had been raised in the juvenile court and timely review sought in this court, which did not happen, it appears on this record that it would have failed. Although the 20 months from charging to dismissal is long enough to engage in a speedy trial analysis, the remaining factors do not inform us why it took 20 months, whether Mr. Castillo asserted his rights or not, and whether he was prejudiced at all.[10] *Iniguez*, 167 Wn.2d at 292-293.

---

[9] Of course, this appeal also is not a review taken from the juvenile court case.

[10] Although he alleges that the victim's lack of cooperation was the reason for the delay, he never attempted to prove that point by showing that trial dates were inappropriately continued or delayed due to her absence. He also faults the prosecutor for not proceeding to trial simply on the basis of the victim's statements, but he never explains how that could have taken place. The child hearsay statute, RCW 9A.44.120, was inapplicable due to her age at the time of the incidents, and the confrontation clause would appear to bar the statements she gave to the detective and the counselor five years later.

Prejudice, in this context, means "looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense." *Id.* at 295. Loss of juvenile court jurisdiction is not one of these concerns. Understandably, Mr. Castillo did not pursue this argument.

Instead, he tried to combine pieces of disparate doctrines—due process prejudice from loss of jurisdiction with constitutional timeliness doctrines related to the handling of the juvenile charges—into a CrR 8.3(b) mismanagement argument. As noted, the argument fails because the "prejudice" concerns differ in the three instances due to the separate rights each is designed to protect. While loss of juvenile court jurisdiction costs a youthful offender important rights, it does not itself impact his ability to obtain a fair trial in adult court, which is the concern of CrR 8.3(b). The superior court erred in concluding otherwise.

At its heart, this case reflects a complaint that the matter was never resolved in the juvenile court. However, it was never resolved there because Mr. Castillo chose not to take part when the case was timely charged there. If he had showed up for trial with the victim refusing to testify, charges would have been dismissed for inability of the prosecutor to prove her case. In his absence, however, the matter could not proceed to adjudication. *State v. Hammond*, 121 Wn.2d 787, 854 P.2d 637 (1993). He does not now get to complain about the loss of jurisdiction that resulted from his own action.

11

No. 32358-7-III
*State v. Castillo*

The order of dismissal is reversed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

                                        _____
                                              Korsmo, J.

I CONCUR:

_____
Siddoway, C.J.

12

No. 32358-7-III

FEARING, J. — (concurring in part and dissenting in part.) The majority may be correct that the trial court's dismissal of the charge of indecent liberties against Miguel Castillo should be reversed and the charge reinstated. Nevertheless, to arrive at its decision to now reverse the dismissal, the majority engages in fact finding unbecoming an appeals court.

The trial court dismissed the charge of indecent liberties because of the unfairness attended to the loss of juvenile court jurisdiction over Miguel Castillo. Many factors attended to the loss of jurisdiction. Those factors include the lack of cooperation from the complaining witness, Castillo's disappearance, and Castillo's counsel's failure to request the juvenile court to retain jurisdiction. Other potential causes of the loss of jurisdiction include delays possibly requested by the State. Miguel Castillo is to blame for some, but not all, of the circumstances causing the juvenile court to lose authority. Instead of allowing the superior court to conduct a hearing to determine the controlling cause, the majority on scant facts solely blames Castillo for the delay. The majority thus gives the benefit of the doubt to the State, not to the accused.

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

In seeking to affirm the dismissal, Miguel Castillo relies on prejudice resulting from government misconduct under CrR 8.3(b) and the due process clause. Castillo should be the master of his argument. Nevertheless, the majority ignores Castillo's argument and reviews the case on speedy trial rules embodied in JuCR 7.8, when the State does not even assert that the juvenile court rule applies.

The complexities of the underlying procedural background demand an exacting and lengthy analysis not found in the majority's summary verdict against Miguel Castillo. The record before this reviewing court is insufficient to determine whether the trial court should be reversed or affirmed. Because of abbreviated facts for us to evaluate and an inconsistency in the trial court's conclusions of law, we should vacate the order of dismissal and remand for additional evidence before and a further review by the trial court of the circumstances that led to the loss of jurisdiction in the juvenile court.

FACTS

The facts supplied to the trial court and on appeal are superficial. The parties submitted the facts to the trial court through legal memoranda rather than under oath.

The State of Washington alleges that, between January 1 and August 31, 2005, Miguel Castillo sexually assaulted B.V. Since Castillo was born on February 17, 1994, he was both ten and eleven years of age during the span of the purported assaults. Because of an August birthday, B.V. was both twelve and thirteen during the same window of months.

2

On November 28, 2009, when Miguel Castillo was fifteen years of age, B.V. reported the alleged assaults. On November 30, 2009, Detective Lee Barrow interviewed Castillo about the allegations against him. We do not know the substance of Castillo's comments to Detective Barrow. We do not know if Castillo confessed to any crime. Barrow sent his report regarding the allegations to the Franklin County Prosecutor's Office on December 2, 2009. We do not have a copy of the report. On April 15, 2010, a counselor at Kids' Haven interviewed B.V. about the alleged sexual assault. We do not know what information B.V. reported to the counselor. Contrary to the assertion of the majority, we do not know if B.V. confirmed with the counselor that she would cooperate with a prosecution of Castillo.

On May 25, 2010, when Miguel Castillo was sixteen years old, the State of Washington charged Castillo in Franklin County Juvenile Court. Critical to this court's review is a determination of the facts leading to the failure to proceed with trial in juvenile court before dismissal of the charges in juvenile court, on February 17, 2012. Sometime after her interview at Kids' Haven, B.V. grew uncooperative and refused to attend a defense interview in the prosecutor's office. B.V. also failed to appear at a scheduled deposition.

The State provides no facts as to what occurred in the juvenile prosecution between May 25, 2010, and October 6, 2011, other than the lack of cooperation from B.V. The State presents no evidence that it subpoenaed B.V. to appear at a trial or that it

3

sought a material witness warrant. I assume the court scheduled the case for trial, and I further assume trial continuances occurred. The State presents no evidence that Miguel Castillo waived any rights to a speedy trial. We are not provided the entire file from the juvenile court proceeding.

Miguel Castillo failed to appear in juvenile court for an omnibus hearing on October 6, 2011. Castillo's counsel also lost contact with him. The trial court issued a warrant for Castillo's arrest on October 6, 2011, when Castillo was seventeen years old. On February 17, 2012, the day Castillo turned eighteen years old, the State dismissed charges without prejudice because the juvenile court lost jurisdiction.

The State shows no conduct on its part between February 17, 2012, and June 3, 2013. On June 3, 2013, the Franklin County Prosecuting Attorney's Office asked its investigator to locate B.V. The investigator found B.V. and the prosecuting attorney's office interviewed her on June 17, 2013. The State confirmed that B.V. would be available to testify in a renewed prosecution.

## PROCEDURE

On August 7, 2013, the State of Washington filed a new charge of indecent liberties in adult court against Miguel Castillo. Castillo moved to dismiss the charge under CrR 8.3(b) and the United States Constitution's Fifth and Fourteenth Amendments. Castillo argued, among other contentions, that the refiling of charges in adult court violated his due process and equal protection rights. Castillo posited that delay in the

4

prosecution prejudiced his case, and he highlighted the loss of juvenile court jurisdiction and the passage of eight years since the alleged criminal conduct. He noted that, despite B.V.'s lack of cooperation and his failure to appear in court, the State could have proceeded with trial in juvenile court based on statements given by him to law enforcement and by B.V. to Kids' Haven. In response, the State blamed the delay on Castillo's failure to appear and the lack of cooperation from the victim.

In his argument before the trial court, Castillo alternatively identified the delay period as, on the one hand, the date of the alleged crimes in 2005 to August 7, 2013, the date of refiling the charge in adult court, and, on the other hand, April 15, 2010, the date of the Kids' Haven interview to the date of refiling the charge. Castillo did not distinguish between preaccusatory delay and postaccusatory delay.

The trial court granted Miguel Castillo's motion to dismiss for prosecutorial delay under CrR 8.3(b). In its oral ruling, the trial court stated:

> In this particular case the State had statements from the victim. Even if the victim was not cooperative, there are ways to get those introduced and had statements of the defendant. I think it's appropriate to dismiss the case. I will grant the motion.
> . . . .
> I'm not finding that the State deliberately did anything just indicating the State should have continued on while they had juvenile jurisdiction.

Report of Proceedings (RP) at 7-8.

The trial court entered findings of fact, which are unchallenged on appeal. One

5

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

finding reads in part: "No further investigation took place between 04/15/2010 and 06/03/2013." Clerk's Papers (CP) at 7. The trial court entered the following conclusions of law:

> 1. Because "prejudice is presumed when juvenile court jurisdiction is lost," *State v. Frazier*, 82 Wn. App. 576, 587-588, 918 P.2d 964 (1996), [Miguel Castillo] was prejudiced by being subjected to adult jurisdiction, thereby violating his due process rights.
> 2. Having [B.V.]'s statement at Kids' Haven and [Castillo]'s statements, the State had enough information to proceed forward with prosecuting the juvenile case.
> 3. The reasons for the delay by the State that led to charging [Castillo] in adult jurisdiction cannot be justified, though the delay in charging was neither deliberate nor negligent on the State's part.
> 4. The remedy for this delay is dismissal. Dismissal under CrR 8.3(b) is an extraordinary remedy and requires the defendant to show by a preponderance of the evidence arbitrary action or governmental misconduct and prejudice affecting the defendant's right to a fair trial.
> 5. This Court finds that "prosecution of this case is contrary to fundamental concepts of justice," and dismisses this case. *Frazier* at 593.

CP at 7-8.

## LAW AND ANALYSIS

### *Calculating Delay*

The trial court dismissed the prosecution because of a delay. Before analyzing whether the delay justified dismissal, I must identify the relevant window of delay. In the trial court, Miguel Castillo claimed the delay ran from the date of the alleged crimes, in 2005, through the date of his motion argument to dismiss in adult court, in February 2014, a delay of at least eight years. On appeal, Castillo begins his calculation of delay

from the date of filing of the charge in juvenile court in May 2010.

I agree with Miguel Castillo that the period of delay should commence with the filing of charges in juvenile court. The State filed the charge promptly after B.V. reported Miguel Castillo's behavior and after Detective Lee Barrow investigated the allegations. The State filed the charge in juvenile court on a date sufficient to proceed to trial before Castillo reached eighteen years of age. The State has broad discretion to decide when to prosecute and may delay prosecution until it determines it can establish guilt beyond a reasonable doubt. *State v. Salavea*, 151 Wn.2d 133, 146, 86 P.3d 125 (2004).

I must also identify the date on which to end the span of delay. On appeal, Miguel Castillo argues the prosecutorial delay prejudiced him solely because the juvenile court lost jurisdiction over the criminal charges. The State argues that, since the prejudice claimed by Castillo is loss of juvenile court jurisdiction, Castillo may not argue any prejudice beyond his turning eighteen on February 17, 2012. According to the State, any delay in refiling charges in adult court is irrelevant. Miguel Castillo suitably concedes this point.

When an accused argues prejudicial delay because of loss of juvenile court jurisdiction, the critical time period ends with the defendant's eighteenth birthday. *State v. Brandt*, 99 Wn. App. 184, 190, 992 P.2d 1034 (2000). Any delay after the birthday does not prejudice the defendant because the juvenile court generally loses jurisdiction on

7

the defendant's eighteenth birthday. *State v. Acheson*, 75 Wn. App. 151, 155, 877 P.2d 217 (1994); *State v. Bushnell*, 38 Wn. App. 809, 811, 690 P.2d 601 (1984). Thus, the ending date for our window of delay is no later than February 17, 2012, Miguel Castillo's eighteenth birthday.

### *Prosecutorial Delay Principles*

The gist of the dispute on appeal resolves around loss of juvenile court jurisdiction, not late filing of charges in adult court. Therefore, the delay at issue is more in the nature of postaccusatorial or prosecutorial delay rather than preaccusatorial delay. Preaccusatorial delay is procrastination occurring before the filing of charges. *State v. Oppelt*, 172 Wn.2d 285, 286-87, 257 P.3d 653 (2011).

The reported decisions that address a delay that led to the loss of juvenile court jurisdiction involve preaccusatory delay. *State v. Oppelt*, 172 Wn.2d 285, 257 P.3d 653 (2011); *State v. Salavea*, 151 Wn.2d at 146; *State v. Warner*, 125 Wn.2d 876, 889 P.2d 479 (1995); *State v. Dixon*, 114 Wn.2d 857, 792 P.2d 137 (1990); *State v. Lidge*, 111 Wn.2d 845, 765 P.2d 1292 (1989); *State v. Alvin*, 109 Wn.2d 602, 746 P.2d 807 (1987); *State v. Calderon*, 102 Wn.2d 348, 684 P.2d 1293 (1984); *State v. Brandt*, 99 Wn. App. 184, 992 P.2d 1034 (2000); *State v. Frazier*, 82 Wn. App. 576, 918 P.2d 964 (1996), *abrogated by State v. Oppelt*, 172 Wn.2d 285, 257 P.3d 653 (2011); *State v. Schifferl*, 51 Wn. App. 268, 753 P.2d 549 (1988); *State v. Robbers*, 46 Wn. App. 558, 731 P.2d 522 (1986); *State v. Anderson*, 46 Wn. App. 565, 731 P.2d 519 (1986); *State v. Boseck*, 45

Wn. App. 62, 723 P.2d 1182 (1986). Nevertheless, the basic rules of determining whether procrastination justifies dismissal should not depend on whether the delay occurred before filing charges, after filing charges, or both. Delay is delay. Decisions addressing postaccusatory delay in other contexts rely on the same test or parts thereof employed in addressing preaccusatory delay. *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997); *State v. Blackwell*, 120 Wn.2d 822, 830-32, 845 P.2d 1017 (1993). Thus, in analyzing this appeal, I rely on both prosecutorial and preaccusational delay decisions.

In his trial court pleadings, Miguel Castillo asserted the United States Constitution's Fourteenth Amendment's equal protection and due process clauses. He provided no argument below in support of an equal protection clause violation, but provided argument based on the due process clause. Since the refiling of the charge occurred in adult court, Castillo also, at the trial court level, relied on CrR 8.3 when forwarding his motion to dismiss.

On appeal, Castillo seeks affirmation of the dismissal only under CrR 8.3. Nevertheless, whether we analyze the appeal under the due process clause or CrR 8.3 makes no difference. The principles and tests announced by our state high court remain the same under both CrR 8.3(b) and the due process clause. Stated differently, the delay analysis under CrR 8.3(b) is similar to the due process balancing analysis. *State v. Oppelt*, 172 Wn.2d at 297-98 (2011). Thus, I conflate cases and principles addressing

9

CrR 8.3(b) and the due process clause.

CrR 8.3 reads:

> **(b) On Motion of Court**. The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Miguel Castillo filed the motion to dismiss; whereas the court rule references a motion by the court. CrR 8.3(b) has been read to encompass motions brought by the accused. While the rule says "[o]n motion of court," it is common practice for the defendant to make a motion to bring to the court's attention circumstances warranting dismissal. *State v. Oppelt*, 172 Wn.2d at 297 n.10; *State v. Sonneland*, 80 Wn.2d 343, 347, 494 P.2d 469 (1972).

When deciding if prosecutorial delay justifies dismissal under CrR 8.3(b) or the due process clause, a Washington court utilizes a three step test. *State v. Salavea*, 151 Wn.2d at 139. First, the defendant must show the delay caused prejudice. *State v. Salavea*, 151 Wn.2d at 139 (2004). If the defendant shows prejudice, the court then examines the State's reasons for the delay. *Salavea*, 151 Wn.2d at 139. Finally, the court balances the reasons for delay against the defendant's prejudice resulting from the delay to decide if the procrastination violates fundamental conceptions of justice. *Salavea*, 151 Wn.2d at 139. The central inquiry always remains whether the action by the government violates fundamental conceptions of justice. *State v. Oppelt*, 172 Wn.2d at 292 (2011).

10

The majority begins its analysis by reciting the three step test, but then the majority changes course in mid-flight and travels an Antarctic route requested by neither the State nor Miguel Castillo. The majority wishes to resolve the appeal on the speedy trial rules found in JuCR 7.8(c). Nevertheless, Castillo filed his motion in superior court, and, thus, a juvenile court rule does not apply. Although a superior court criminal rule is parallel to JuCR 7.8(c), Castillo is free to seek dismissal on grounds other than speedy trial court rules. No principle of law precludes application of the due process clause or CrR 8.3(b) when a speedy trial court rule could apply. Also, the use of CrR 8.3(b) may be novel under these circumstances, as suggested by the majority, but an innovative argument is not a wrong or impermissible argument.

The majority's employment of JuCR 7.8(c) is misplaced for another critical reason. The majority, without any evidence, assumes that Miguel Castillo periodically waived his speedy trial rights. Without admitting the finding, the majority determines that Castillo waived these rights. The record contains no such showing. Again the majority gives the State, not Miguel Castillo, the benefit of the doubt. Instead of assuming a waiver, this court should remand for a review of the records to determine if Miguel Castillo waived his rights.

The three step analysis under CrR 8.3(b) and the due process clause is the proper test to apply on this appeal. I now apply these three steps in a lengthy analysis.

*Prejudice*

11

The accused must first show the State's lagging caused actual prejudice to his defense in order to satisfy prong one of the prosecutorial delay test. *State v. Salavea*, 151 Wn.2d at 139 (2004); *State v. Norby*, 122 Wn.2d 258, 264, 858 P.2d 210 (1993). Under due process rules, prejudice is presumed when juvenile court jurisdiction is lost. *State v. Dixon*, 114 Wn.2d at 861 (1990); *State v. Frazier*, 82 Wn. App. at 587-88 (1996). Offenders fulfill their burden of proof when prosecutorial delay causes a loss of juvenile court jurisdiction because the loss results in a decrease of benefits available to a defendant in the juvenile court system. *State v. Salavea*, 151Wn.2d at 139; *State v. Dixon*, 114 Wn.2d at 860-61; *State v. Alvin*, 109 Wn.2d at 604 (1987); *State v. Calderon*, 102 Wn.2d at 352-53 (1984). The loss of juvenile court jurisdiction subjects the accused to harsher penalties and the potential stigma of an adult criminal conviction. *Dixon*, 114 Wn.2d at 860-61.

Miguel Castillo allegedly committed his offense while a juvenile. The State filed the charge when he was sixteen years of age and with one year and eight months open to complete the prosecution before the juvenile court lost jurisdiction. Thus, Castillo shows prejudice by a delay leading to loss of juvenile court jurisdiction. I analyze later whether the State, Castillo, or both are to blame for this delay.

*Government Misconduct*

The second step in the analysis is to examine the reason for the delay. Under this element of the test, we identify, characterize, and ascertain a level of blame for the State's

conduct that led to the delay. An important question is whether the delay in prosecuting an accused was justified. *State v. Brandt*, 99 Wn. App. at 189 (2000). Absent a showing of arbitrary action or governmental misconduct, a trial court cannot dismiss charges under CrR 8.3(b). *State v. Michielli*, 132 Wn.2d at 240 (1997). CrR 8.3(b) is designed to protect against arbitrary action or governmental misconduct and not to grant courts the authority to substitute their judgment for that of the prosecutor. *State v. Cantrell*, 111 Wn.2d 385, 390, 758 P.2d 1 (1988); *State v. Starrish*, 86 Wn.2d 200, 205, 544 P.2d 1 (1975).

Loss of juvenile court jurisdiction does not automatically lead to a finding of unjust prosecutorial delay, in part, because loss of jurisdiction is not always the fault of the State. The accused has no constitutional right to be tried as a juvenile. *State v. Dixon*, 114 Wn.2d at 860 (1990). Absent extraordinary circumstances, a juvenile's case is managed in the same manner as all other cases and does not receive special treatment even if the juvenile is about to turn eighteen. *State v. Salavea*, 151 Wn.2d at 146 (2004); *State v. Calderon*, 102 Wn.2d at 354 (1984).

Under the second step of the delay inquiry, governmental misconduct need not be of an evil or dishonest nature to warrant dismissal. *State v. Michielli*, 132 Wn.2d at 239-40 (1997); *State v. Blackwell*, 120 Wn.2d at 831. Since the central inquiry is whether the action by the government violates fundamental conceptions of justice, the intent of the government actors is unimportant. *State v. Oppelt*, 172 Wn.2d at 292 (2011). Simple

13

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

mismanagement is sufficient. *State v. Michielli*, 132 Wn.2d at 239-40 (1997); *State v. Blackwell*, 120 Wn.2d at 831. Simple mismanagement constitutes government misconduct under CrR 8.3(b) such that negligent delay may result in a due process violation. *State v. Oppelt*, 172 Wn.2d at 291 n.3; *State v. Blackwell*, 120 Wn.2d at 831 (1993).

Miguel Castillo argues on appeal that the State has provided no adequate explanation for the delay in juvenile court. On appeal, the State contends that it did not provide detailed evidence to the trial court as to the delay in juvenile court, because Castillo did not assert this period as the prejudicial period of delay before the lower court. I agree with the State that Miguel Castillo did not focus on this one year and eight months of juvenile court jurisdiction when seeking dismissal below. Castillo instead asserted prejudice during a longer period of time. This shift in argument may warrant a new hearing. Nevertheless, the State knew that Castillo included in the time of delay the time during which the juvenile charges were pending.

The State presents two reasons for the delay in proceeding to trial in the juvenile court prosecution, the lack of cooperation from the victim and the absence of Miguel Castillo. We will address Miguel Castillo's absence later. Nevertheless, Castillo's absence did not occur until October 6, 2011, one year and four months after the filing of the charge. One year and four months is a lengthy duration in juvenile court.

A witness' reluctance to speak with investigating officers may justify a delay

14

before filing charges. *State v. Brandt*, 99 Wn. App. at 191-92 (2000). Nevertheless, no court has held such a reluctance to warrant delay of a juvenile court prosecution after filing charges, let alone a delay for more than one year. Since the State may delay charges until it gathers evidence to prove charges beyond a reasonable doubt, when the State files a charge the State should be ready to commence trial.

The trial court concluded, in part, that the State could have proceeded with trial in juvenile court because of a statement given by Miguel Castillo to an investigating officer. We do not know the content of that statement. Therefore, we encounter difficulty in concluding that the statement warranted proceeding to trial. A remand would help by affording the opportunity to make the statement a part of the record.

The trial court also concluded that, with the possession of B.V.'s statement at Kids' Haven, the State had enough evidence to proceed forward with prosecuting the juvenile case. The State argues these statements would not have been admissible at trial, and the State may be correct. I note that the child hearsay statute applies to statements made by a child while under the age of ten. RCW 9A.44.120; *State v. Beadle*, 173 Wn.2d 97, 111-12, 265 P.3d 863 (2011). B.V. was seventeen years of age when interviewed at Kids' Haven. I need not decide, however, whether the Kids' Haven counselor could inform the jury of B.V.'s statements because other grounds exist to conclude the State engaged in mismanagement despite the lack of cooperation from B.V.

Miguel Castillo argues that the State could have subpoenaed B.V. or sought a

material witness warrant to compel her testimony despite her failure to cooperate. Therefore, Castillo contends the trial court was correct in finding mismanagement. I agree.

In a series of persuasive cases, other courts have charged the State with delays caused by absent witnesses for purposes of speedy trial rights. In *State v. Gillis*, 63 Haw. 285, 626 P.2d 190 (1981), the Hawaii Supreme Court dismissed charges against Richard Gillis because of delay in bringing the prosecution to trial. The State abandoned earlier charges because of a missing chief prosecution witness. The government attempted to locate the witness by preparing an unserved subpoena and the use of two investigators. The Aloha State high court concluded that the State failed to exercise diligence in securing the attendance of the witness.

In *People v. Familia-Morel*, 151 Misc. 2d 55, 570 N.Y.S.2d 895 (Crim. Ct. 1991), the court dismissed charges against Miguel Familia-Morel because of the People's failure to timely secure the attendance of a key witness, a law enforcement officer. The officer's young daughter contracted spinal meningitis twelve days before the hearing. The officer stayed with the daughter in the hospital through the date of the hearing. The court noted that the unavailability of a prosecution witness is an exceptional circumstance justifying prosecutorial delay, provided the People employ due diligence to make the witness available. The court did not fault the People for failing to secure the officer's testimony on the date of the hearing, but faulted the People for failing to continue in communication

16

with the officer to procure his testimony upon the daughter's discharge from the hospital.

In *State v. Windish*, 590 N.W.2d 311 (Minn. 1999), the court charged the State with a delay in proceedings caused by an absent witness. The complaining witness was in Arizona at the time of trial. The court noted that the unavailability of a witness constitutes good cause for delay, provided the prosecutor diligently attempted to secure the attendance of the witness. The State failed to produce any evidence of its efforts to ensure the witness' appearance.

*People v. Khan*, 146 A.D.2d 806, 537 N.Y.S.2d 284 (1989) involves the opposite outcome because the People employed due diligence. The court denied Shah Khan's motion to dismiss on the ground that the People denied his statutory right to a speedy trial. The lower court delayed trial because of a missing key witness. On learning that the witness moved to Florida and did not wish to testify, the People immediately prepared a material witness order, obtained the trial court's signature on the order, and forwarded the order to the office of the Florida State Attorney. The reviewing court refused to charge the People with the delay caused by the absent witness because the People exercised due diligence.

In the case on appeal, the State does not contend that B.V. went missing. The State only contends that B.V. was uncooperative, a reason less compelling than an absent witness. The State could have subpoenaed B.V. to testify. CrR 4.8. The State could have sought a warrant for the arrest of B.V. as a material uncooperative witness. CrR

17

4.10. I would hold that the trial court could correctly conclude that the delay and loss of juvenile court jurisdiction was caused by government mismanagement for failing to subpoena B.V. to trial or to obtain a material witness warrant if B.V. still failed to cooperate. While I would conclude that the trial court *could* so conclude, I am uncertain if the trial court *so* concluded.

The trial court, in conclusion of law 3, wrote that "the delay by the State that led to charging in adult jurisdiction . . . was neither deliberate nor negligent on the State's part." CP at 8. The trial court's conclusion that the State's conduct was not negligent is problematic. Case law suggests that the trial court may dismiss a prosecution only if the State's conduct is negligent or worse. *State v. Michielli*, 132 Wn.2d at 240 (1997).

In conclusion of law 3, the trial court further wrote that "[t]he reasons for the delay . . . cannot be justified." CP at 8. In conclusion of law 4, the trial court implied that Miguel Castillo showed "by a preponderance of the evidence arbitrary action or governmental misconduct." CP at 8. These additional conclusions conflict with a finding of no negligence. "Simple mismanagement" constitutes government misconduct under CrR 8.3(b) such that negligent delay may result in a due process violation. *State v. Oppelt*, 172 Wn.2d at 291 n.3 (2011); *State v. Blackwell*, 120 Wn.2d at 831 (1993). Negligence is tantamount to government mismanagement under prosecutorial delay rules and in other contexts. *State v. McConnell*, 178 Wn. App. 592, 602, 315 P.3d 586 (2013), *review denied*, 180 Wn.2d 1015, 327 P.3d 54 (2014); *August v. U.S. Bancorp*, 146 Wn.

18

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

App. 328, 344, 190 P.3d 86 (2008); *Gillespie v. Seattle-First Nat'l Bank*, 70 Wn. App. 150, 153, 855 P.2d 680 (1993); *First Interstate Bank of Wash. v. Lindberg*, 49 Wn. App. 788, 791, 746 P.2d 333 (1987). "Mismanagement" is a related word of "negligence" in the thesaurus. MERRIAM-WEBSTER THESAURUS, http://www.merriam-webster.com/thesaurus/negligence (last visited Sept. 15, 2015).

When a trial court enters inconsistent conclusions, the reviewing court should remand for a new trial or hearing. *Konikowski v. Everson*, 42 Conn. App. 658, 660, 680 A.2d 1366 (1996). I would remand this case to the trial court for, among other purposes, a reconciliation of the conclusions of law. Unless the trial court finds some negligence, no matter how slight, the motion to dismiss should be denied. The State does not engage in arbitrary conduct or government misconduct without intentional misconduct or negligence. The trial court should consider mismanagement by the State to be negligence.

The majority relies on *State v. Maynard*, 183 Wn.2d 253, 351 P.3d 159 (2015). In *Maynard*, the State initially filed charges in juvenile court, but refiled in adult court after the accused turned eighteen years of age. The Supreme Court held that Christopher Maynard failed to show preaccusatorial delay in filing charges since the juvenile court lost jurisdiction when Maynard turned eighteen years of age and his counsel did not ask for an extension in juvenile court jurisdiction. The State filed charges on July 7, 2011, and Maynard turned eighteen on August 1, 2011.

19

A broad reading of *Maynard* is favorable to the State in this appeal. Under an expansive view of *Maynard,* the loss of juvenile court jurisdiction is never the result of government misconduct since defense counsel could always seek an extension of juvenile court authority. Nevertheless, the *Maynard* facts are widely diverse from the case on appeal. In *Maynard,* the State possessed less than a month to complete prosecution before the juvenile court lost jurisdiction. The State had one year and eight months to complete the prosecution against Miguel Castillo in juvenile court. We do not know if Miguel Castillo's juvenile court counsel had the opportunity to move to retain juvenile court jurisdiction and whether any such motion would have been granted. Even assuming both, other factors could have been the leading cause of the loss of juvenile court jurisdiction. Thus, a remand for further fact finding is indispensable.

### Miguel Castillo's Absence

On October 6, 2011, Miguel Castillo failed to appear at an omnibus hearing. I assume he voluntarily remained unavailable for trial through his eighteenth birthday in February 2012. Castillo's disappearance complicates the analysis under CrR 8.3(b) and the resolution of Castillo's motion to dismiss.

The trial court's ruling may assume incorrectly that the State could have proceeded to trial without the presence of Miguel Castillo. Under Washington law, one may not be tried in absentia, unless present at the commencement of trial. CrR 3.4; JuCR 1.4(b); *State v. Jackson,* 124 Wn.2d 359, 361, 878 P.2d 453 (1994); *State v. Brown,* 178

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

Wn. App. 70, 76, 312 P.3d 1017 (2013), *review denied*, 180 Wn.2d 1004, 321 P.3d 1206 (2014). Nevertheless, under CrR 3.4(c), if, in any case the defendant is not present when his personal attendance is necessary, the court may order the clerk to issue a bench warrant for the defendant's arrest, which may be served as a warrant of arrest in other cases. JuCR 1.4(b) would apply this adult court rule to juvenile court. The juvenile court issued a warrant for Castillo's arrest.

Miguel Castillo may argue that the State has failed to show due diligence in arresting him. No Washington case has addressed whether the time during which an accused voluntarily absents himself from the proceedings may be held against the State when determining prosecutorial delay. Fairness recommends that the State should not be held responsible for a delay caused by the defendant, even if the State took no steps to arrest him, otherwise the accused benefits from his misbehavior. A legal maxim, applied in numerous contexts, demands that one not profit from his own wrong. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993); *Golberg v. Sanglier*, 96 Wn.2d 874, 887, 639 P.2d 1347, 647 P.2d 489 (1982); *Cheney v. Dep't of Labor and Indus.*, 175 Wash. 60, 63, 26 P.2d 393 (1933); *Crevelli v. Chicago, Milwaukee & Saint Paul Ry. Co.*, 98 Wash. 42, 46, 167 P. 66 (1917); *Paris v. Allbaugh*, 41 Wn. App. 717, 719, 704 P.2d 660 (1985); *Brown v. Spokane County Fire Prot. Dist. No. 1*, 21 Wn. App. 886, 895, 586 P.2d 1207 (1978); *Leavy, Taber, Schultz and Bergdahl v. Metro. Life Ins. Co.*, 20 Wn. App. 503, 511, 581 P.2d 167 (1978).

21

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

In *State v. Salavea*, 151 Wn.2d 133, 86 P.3d 125 (2004), the Supreme Court held, in part, that a delay in filing charges was justified by the accused's absence from the jurisdiction. Under speedy trial rules, a time for trial violation is excused if the delay was caused by any fault or connivance on the part of the defendant. *State v. Greenwood*, 120 Wn.2d 585, 600, 845 P.2d 971 (1993); *State v. Striker*, 87 Wn.2d 870, 872, 557 P.2d 847 (1976). In a decision worthy of some respect, a New York court refused to impute to the State that portion of a delay resulting from the absence of the defendant when determining whether to dismiss a prosecution. *People v. Woods*, 150 Misc. 2d 1070, 572 N.Y.S.2d 279 (Crim. Ct. 1991). In *State v. Daniels*, 413 So. 2d 1256, 1257 (Fla. Dist. Ct. App. 1982), the trial court refused to charge the State with a delay caused by the defendant's failure to appear.

On appeal, the State blames, in part, the juvenile court's loss of jurisdiction on Miguel Castillo's disappearance beginning on October 6, 2011. The juvenile court retained jurisdiction until February 17, 2012. The sole prejudice alleged by Castillo is loss of juvenile court jurisdiction. Thus, if the juvenile court prosecution would have proceeded to trial between October 6, 2011, and February 17, 2012, but for Miguel Castillo's absence, Castillo deserves blame for the prejudice.

I do not know if the State would have proceeded to trial and completed the case in juvenile court if Miguel Castillo did not disappear. Because of the extensive delay before Castillo's disappearance, a trier of fact could conclude that the State would have delayed

22

until loss of juvenile court jurisdiction, in part because of the uncooperative witness. I would remand for the trial court to determine whether the State would have proceeded with trial in juvenile court before Castillo turned eighteen years old if Castillo remained available for trial. The majority, instead of remanding for such fact finding, determines on its own that Miguel Castillo is the sole cause of the juvenile court's loss of jurisdiction. If the trial court were to find that trial would have occurred, the motion to dismiss should be denied.

When resolving this question, I would encourage the trial court to entertain live testimony or affidavits. In other delay cases, the State provided testimony explaining the specific reasons for the delay in filing. *State v. Frazier*, 82 Wn. App. at 588 (1996). The State provided no testimony, only argument, below. I would also direct the trial court to review the entire juvenile court record for clues as to reasons for the delay and whether the State would have proceeded to trial in juvenile court but for Miguel Castillo's absence. I would further direct the trial court to make the juvenile court record part of the superior court record in the event of later appellate court review of its decision.

### Balancing

The last step when entertaining a motion to dismiss is to balance the State's interest against the prejudice to the accused from losing juvenile court jurisdiction. *State v. Brandt*, 99 Wn. App. at 192 (2000). Washington courts have announced different formulations of what courts must balance in conducting a preaccusatorial delay analysis.

*State v. Oppelt*, 172 Wn.2d at 294 (2011). Our courts have employed three different assessments: (1) the "reasons for the delay" are balanced with the prejudice to the defendant, *State v. Schifferl*, 51 Wn. App. at 272 (1988); (2) "the State's interest" is balanced with the prejudice to the defendant, *State v. Frazier*, 82 Wn. App. at 589 (1996); and (3) "the delay" is balanced with the prejudice. *State v. Salavea*, 151 Wn.2d at 139 (2004).

In *Oppelt*, our state high court's latest review of delay, the court declared that what are meant to be balanced are the reasons for the delay and the prejudice to the defendant caused by the delay. *State v. Oppelt*, 172 Wn.2d at 294 (2011). We do not balance the State's interest in prosecuting the defendant against the prejudice to the defendant. *State v. Oppelt*, 172 Wn.2d at 294 n.7. The State's reason for delay is not the same thing as the State's interest in prosecution. *Oppelt*, 172 Wn.2d at 294 n.7. For example if the reason for delay was the State's negligence, the court should weigh the prejudice to the accused and the State's negligence, not the State's interest in prosecution. *State v. Oppelt*, 172 Wn.2d at 294 n.7. I note that negligence, strictly speaking, may not be the reason for the delay, but the level of blame to assess because of the government action leading to the delay. Still, the government action and the level of blame may be integrally related.

If mere negligent conduct by the prosecutors is asserted, then the delay or prejudice suffered by the defendant must be greater than that in cases where recklessness or intentional governmental conduct is alleged. *State v. Oppelt*, 172 Wn.2d at 292

(2011). If the delay is intentional, due process is violated, but if the delay only is negligent, due process may or may not be violated. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977); *State v. Calderon*, 102 Wn.2d at 352-53 (1984). A delay without justification does not demand an automatic dismissal. *State v. Oppelt*, 172 Wn.2d at 287. Dismissal is an extraordinary remedy to which the court should resort only in truly egregious cases of mismanagement or misconduct. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

We note criticism of Washington's three part test because balancing the reasons for the delay against prejudice to the accused is nonsensical. *United States v. Crouch*, 84 F.3d 1497, 1512 (5th Cir. 1996). One cannot assign numbers to the reasons for the delay, on the one hand, and the prejudice to the accused, on the other hand, in order to adjudge which one weighs more. Balancing prejudice against the reasons for delay is awkward because the items to be placed on either side of the balance are wholly different from each other and have no possible common denominator. *State v. Oppelt*, 172 Wn.2d at 295 n.8. Our high court nonetheless determined that the Washington test withstands this criticism because "weighing" and "balancing" cannot be taken literally. *State v. Oppelt*, 172 Wn.2d at 295 n.8. Prejudice to the accused and reasons for the delay should be considered factors used to determine whether fundamental notions of justice are offended by a continued prosecution. *State v. Oppelt*, 172 Wn.2d at 296.

The three step test is not the end, but guideposts to the end. The three-pronged

25

test is best understood as an analytical tool to assist the court in answering the underlying question of whether a delay resulted in a due process violation by violating fundamental conceptions of justice. *State v. Oppelt*, 172 Wn.2d at 295 (2011). The "prongs" should be approached with this principle in mind. *State v. Oppelt*, 172 Wn.2d at 295.

The core question is whether the action by the government violated fundamental conceptions of justice. *Lovasco*, 431 U.S. at 790; *Calderon*, 102 Wn.2d at 353. In answering this question, we consider whether the government action about which the accused complains violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency. *State v. Oppelt*, 172 Wn.2d at 289; *State v. Warner*, 125 Wn.2d at 890 (1995); *State v. Lidge*, 111 Wn.2d at 852 (1989); *State v. Calderon*, 102 Wn.2d at 353 (1984); *State v. Brandt*, 99 Wn. App. at 192 (2000).

The area of law has no formal bright line rules. *State v. Oppelt*, 172 Wn.2d at 294. There are always reasons for a delay, and some are better than others. *State v. Oppelt*, 172 Wn.2d at 294. An unjustifiable delay does not mean automatic dismissal. *State v. Oppelt*, 172 Wn.2d at 294; *Schifferl*, 51 Wn. App. at 273 (1988).

The parties dispute whether our standard of review is de novo or abuse of discretion. Under CrR 8.3(b), a trial court's power to dismiss charges is reviewable under the manifest abuse of discretion standard. *State v. Michielli*, 132 Wn.2d at 240 (1997); *State v. Warner*, 125 Wn.2d at 882-83 (1995). Discretion is abused when the trial

26

court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Blackwell*, 120 Wn.2d at 830 (1993). Under the due process clause, whether an accused's rights were violated based on prosecutorial delay is a question we review de novo. *State v. Salavea*, 151 Wn.2d at 138 (2004); *State v. Warner*, 125 Wn.2d at 883.

I do not resolve this dispute over the standard of review. Under either standard, I would conclude that we must remand the case. The trial court's ruling contains inconsistencies and ambiguities that should be resolved. Further exploration of the underlying facts is needed. As previously written, if, on further review, the trial court would find that the State would have proceeded to trial between October 6, 2011, and February 17, 2012, but for Miguel Castillo's absence, the trial court should deny the motion to dismiss because Castillo shows no prejudice. Actual prejudice is essential to a grant of the motion. In the alternative, if the trial court were to find that the State did not engage in any negligence that led to the delay, the trial court should deny the motion to dismiss. If the trial court were to conclude the State to be negligent and found that the prosecution would not have proceeded to trial in juvenile court regardless of Miguel Castillo's presence, the trial court should weigh the reason for delay with the prejudice to Castillo in losing juvenile court jurisdiction.

To repeat, the majority finds Miguel Castillo to be the sole party responsible for the delay in the juvenile court and the loss of juvenile court jurisdiction. The majority

27

ignores any part the State played in the delay and loss of jurisdiction. The majority's conclusion that Castillo is the cause of the loss of juvenile court jurisdiction is a finding supported by some of the evidence, but in conflict with other evidence. Thus, the majority conducts its own fact finding. Appeals courts do not find facts. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Facts are for the trial judge to determine, not this court. *Thorndike*, 54 Wn.2d at 575.

Because the ultimate decision is whether fundamental concepts of justice were violated, the trial court should review the entire record, including the juvenile court file. *State v. Oppelt*, 172 Wn.2d at 290. I would encourage the parties on remand to file affidavits to support factual contentions or to provide live testimony. In *State v. Frazier*, 82 Wn. App. 576 (1996), the trial court entertained testimony from court personnel and deputy prosecuting attorneys. Most importantly, I would encourage the parties to provide evidence for the trial court to assess whether the State would have completed the prosecution in juvenile court if Miguel Castillo remained available for trial.

Under RAP 12.2, the appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require. When relevant evidence is sketchy, a reviewing court may remand for a further hearing before the trial court. *City of Sumner v. First Baptist Church of Sumner*, 97 Wn.2d 1, 12, 639 P.2d 1358 (1982).

28

No. 32358-7-III
*State v. Castillo*-concurring in part dissenting

Each party may wish for us to resolve this case on appeal. In order to resolve the motion to dismiss, the court must in the end determine if the delay violated "fundamental conceptions of justice." Continued prosecution must offend the community's sense of fair play and decency. These standards are vague and should be addressed only after a thorough review of all relevant factors. The trial court is in the best position to render an initial assessment of whether the unique factors of a case warrant dismissal under fundamental conceptions of justice.

I CONCUR IN PART AND DISSENT IN PART:

_____
Fearing, J.

29