[No. 84573-5. En Banc.]

Argued May 5, 2011. Decided August 11, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID A. OPPELT, JR., *Petitioner*.

*Sarah McNeel Hrobsky* (of *Washington Appellate Project*), for petitioner.

*Mark K. Roe, Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 CHAMBERS, J. — David A. Oppelt Jr. was accused by his stepdaughter in 2001 of sexually abusing her. The police investigated but, without justification for the delay, Oppelt was not charged until 2007. Oppelt argued that his due process rights were violated by the preaccusatorial delay of

over six years, and that the charges against him should therefore be dismissed. The trial court disagreed, and Oppelt was convicted of child molestation. Oppelt appealed, arguing that the trial court had misapplied the preaccusatorial delay test for determining whether due process was violated by the delay. Due process may be violated by a preaccusatorial delay even if the charges are ultimately filed within the statute of limitations. The core question a court must answer is whether fundamental conceptions of justice would be violated by allowing the prosecution. We have developed a three-pronged analytical framework to assist the court in answering this question. We reject the State's contention that negligent delay can never violate due process. We reject the defendant's contention that any delay without justification demands an automatic dismissal. We conclude that the trial court engaged in the proper balancing test, and on de novo review we affirm the trial court and the Court of Appeals' denial of Oppelt's motion to dismiss for preaccusatorial delay. Finally, we find no violation of CrR 8.3(b). We affirm the Court of Appeals and the trial court.

FACTS AND PROCEDURAL HISTORY

¶2  In 2001, A.R. was living with her great-grandparents. For about a week in May of that year, A.R. stayed with her mother and her stepfather, Oppelt. According to A.R., Oppelt sexually assaulted her twice during her stay by rubbing her genitals with his fingers. She returned to her great-grandparents' house the same day the last incident of abuse occurred, and she told her great-grandmother what had happened and that she was in pain. Her great-grandmother gave her some lotion to apply to her vagina and later took A.R. to be examined by a nurse, who observed redness and swelling of the genitalia. Another exam a week later revealed that the swelling and redness had decreased significantly.

¶3 A few days after A.R. told her great-grandmother about the abuse, the police were notified. Officer Jonathan Jensen was assigned to the case. According to Jensen, he completed and filed his investigation report on August 2, 2001. The report never made it to the prosecutor's office. Nearly six years later, a Child Protective Service (CPS) worker asked the prosecutor's office about the case.[1] Charges were finally filed on November 26, 2007.

¶4 Oppelt moved to dismiss the charges against him on grounds of preaccusatorial delay and government misconduct under CrR 8.3(b). At a pretrial hearing in the Snohomish County Superior Court, the judge found actual prejudice to Oppelt because the great-grandmother could no longer remember what kind of lotion she gave to A.R., thus precluding Oppelt from arguing definitively that the redness and swelling was caused by a reaction to a particular brand of lotion. Despite also finding that the government's delay was negligent, the judge denied both motions because, in essence, the prejudice to Oppelt was not severe enough to warrant dismissal. After a jury trial, Oppelt was convicted and sentenced to 90 months in prison and three to four years of community custody. The Court of Appeals affirmed his conviction in an unpublished opinion. *State v. Oppelt*, noted at 155 Wn. App. 1021, 2010 WL 1433480, 2010 Wash. App. LEXIS 734. We granted review. *State v. Oppelt*, 169 Wn.2d 1017, 238 P.3d 502 (2010).

PREACCUSATORIAL DELAY

A. Due Process

¶5 In *United States v. Lovasco*, 431 U.S. 783, 789, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), the United States Supreme Court held that a preaccusatorial delay can result in a due process violation even where the statute of limita-

---

[1] It appears that the CPS worker was contacted by A.R.'s caregivers at the time, to whom she had disclosed the abuse, and who were upset that nothing had ever been done.

tions has not expired. Although the statute of limitations provides a definitive legislative limit, due process may also be implicated by preaccusatorial delay. *Id.* (quoting *United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)). The court said its role was circumscribed:

We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency."

*Lovasco*, 431 U.S. at 790 (citations omitted). *Lovasco* also stated that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.*

¶6 This court first interpreted *Lovasco*'s preaccusatorial delay requirements in *Calderon*:

The defendant must show that he was prejudiced by the delay and, in making its due process inquiry, the court must consider the reasons for the delay as well as the prejudice to the accused.

. . . .

Simply establishing prejudice is not enough, however. To find a due process violation, the court must also consider the State's reasons for the delay. If the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused. Ultimately, the test suggested by the U.S. Supreme Court is "whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions'.["]

*State v. Calderon*, 102 Wn.2d 348, 352-53, 684 P.2d 1293 (1984) (second alteration in original) (citations omitted) (quoting *Lovasco*, 431 U.S. at 790 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791 (1935))). Our next case to address preaccusatorial delay articulated an ana-

lytical framework in the form of a three-part test to assist a court in determining whether a delay violates fundamental conceptions of justice:

> [T]he *Calderon* court established a 3-prong test for determining when preaccusatorial delay violates due process. (1) The defendant must show he was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3) if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.
>
> . . . .
>
> . . . The ultimate test is " 'whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions'."

*State v. Alvin*, 109 Wn.2d 602, 604-05, 746 P.2d 807 (1987) (third alteration in original) (citations omitted) (quoting *Calderon*, 102 Wn.2d at 353 (quoting *Lovasco*, 431 U.S. at 790)). Most recently, in *State v. Salavea*, 151 Wn.2d 133, 86 P.3d 125 (2004), we articulated the test slightly differently:

> First, the defendant must show the charging delay caused prejudice. If the defendant shows prejudice, the court then examines the State's reasons for the delay. Finally, the court balances the delay against the defendant's prejudice to decide if the delay violates the "fundamental conceptions of justice."

*Id.* at 139 (citing *Lovasco*, 431 U.S. at 790; *Calderon*, 102 Wn.2d at 352-53; *State v. Dixon*, 114 Wn.2d 857, 858-59, 792 P.2d 137 (1990)).

■ ¶7 Whether due process rights are violated by a preaccusatorial delay is a question we review de novo. *Id.* at 138-39 (citing *State v. Warner*, 125 Wn.2d 876, 883, 889 P.2d 479 (1995)). Because our review is de novo, we examine the entire record to determine prejudice and to balance the delay against the prejudice. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 514 n.31, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) (court reviewing de novo makes original appraisal of all evidence).

## B. Negligent Delay

¶8 The State argues, in accord with several jurisdictions outside Washington, that only intentional delay in bad faith can violate due process, while merely negligent delay can never result in a due process violation.[2] *See United States v. Crouch*, 84 F.3d 1497, 1511-12 (5th Cir. 1996). This court, however, has never made a definitive statement on the issue. *See Calderon*, 102 Wn.2d at 353 ("It has been suggested that negligently failing to bring charges promptly may also establish a constitutional violation."); *Salavea*, 151 Wn.2d at 139 ("[I]f the delay only is negligent, due process may or may not be violated.").

¶9 Circuits holding that negligent delay alone can never violate due process explicitly reject a balancing or weighing approach like the one adopted by this court. *E.g.*, *Crouch*, 84 F.3d at 1514 ("we reject the . . . balancing test and hold that for preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government . . . for some . . . bad faith purpose"). Instead, those circuits that have rejected balancing invariably require the defendant to show (1) actual prejudice and (2) intentional bad faith by the government.[3] *Id.* at 1511-12 (reviewing the various formulations of the test in the various circuits).

---

[2] The State also asserts that the United States Supreme Court has held in some circumstances that government negligence can never result in a substantive due process violation. But the cases cited are in the context of claims under 42 U.S.C. § 1983, where the Court has established a "shocks the conscience" standard for harmful government action before relief will be granted. *E.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Since mere negligence typically does not shock the conscience, the claimant must show greater government culpability. *See id.* at 849. The Court has said nothing about negligence in the criminal preaccusatorial delay context.

[3] This is markedly similar to the showing required by CrR 8.3(b), discussed below. However, we allow "simple mismanagement" to constitute government misconduct under CrR 8.3(b), which supports the claim that negligent delay alone can result in a due process violation in this state. *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993).

¶10 Circuits that apply a balancing test similar to ours, on the other hand, have held that negligence can result in a due process violation.[4] *Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990) (adopting a balancing approach and finding a due process violation where the State's delay was negligent and defendant was seriously prejudiced); *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) ("If mere negligent conduct by the prosecutors is asserted, then obviously the delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged.").

■ ¶11 The jurisprudence of this court and the better reasoning of the Fourth and Ninth Circuits support adopting the approach that negligent delay can violate due process. *See Howell*, 904 F.2d at 895; *Moran*, 759 F.2d at 782. The core question is whether the action by the government violates fundamental conceptions of justice. *Lovasco*, 431 U.S. at 790; *Calderon*, 102 Wn.2d at 353. The answer to this question does not necessarily turn on the intent of the government actors.

¶12 As we said in *Calderon*, "Ultimately, the test suggested by the United States Supreme Court is 'whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions".'" *Calderon*, 102 Wn.2d at 353 (alteration in original) (quoting *Lovasco*, 431 U.S. at 790 (quoting *Mooney*, 294 U.S. at 112)). We also stated that "in making its due process inquiry, the court must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 352. The formalistic and rigid two-part test used in the majority of circuits does not accurately reflect the more nuanced approach suggested by the United States Supreme Court and adopted by this court in *Calderon*. As one Court of

---

[4] Although it has adopted a balancing test, the Seventh Circuit's stance on the matter of negligence is somewhat ambiguous. *See United States v. Sowa*, 34 F.3d 447, 450-52 (7th Cir. 1994).

Appeals opinion correctly observed, "[I]f mere negligent conduct is asserted, the . . . prejudice suffered by the defendant will have to be greater than where intentional or deliberate government conduct is alleged." *State v. Schifferl*, 51 Wn. App. 268, 273, 753 P.2d 549 (1988) (citing *Moran*, 759 F.2d 777).

## C. Automatic Dismissal

¶13 Oppelt argues that, if the defendant shows prejudice from a preaccusatorial delay and the State cannot justify the delay, the case must be dismissed without balancing. Oppelt's argument relies on this court's formulation of the third prong of the preaccusatorial delay test before its most recent iteration:[5] "if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused." *Alvin*, 109 Wn.2d at 604 (citing *Calderon*, 102 Wn.2d at 352-53). Oppelt asserts this allows the court to reach the third prong *only* "if the State is able to justify the delay," but if the State cannot justify the delay, the court should stop, go no further, perform no balancing, and dismiss the case.

¶14 Here, the delay was caused by the State's negligence. *See* Clerk's Papers (CP) at 93. The defendant argues this means the State was not "able to justify the delay," and therefore the court should not have gone on to the balancing test but should have simply dismissed the case. Suppl. Br. of Pet'r at 9. Like the State, Oppelt wants a simple, formalistic approach.[6] Both parties confuse the analytical framework this court has adopted to assist in answering the core question of whether the government action violates funda-

---

[5] Our most recent iteration is in *Salavea*, discussed above. *Salavea*, 151 Wn.2d at 139.

[6] One Court of Appeals opinion agrees with Oppelt that "balancing the State's interest against the prejudice to the accused[ ] is undertaken only when a justification is presented." *State v. Frazier*, 82 Wn. App. 576, 589, 918 P.2d 964 (1996). We decline to follow this holding, which is contrary to our balancing scheme and conflicts with another Court of Appeals decision. *See Schifferl*, 51 Wn. App. at 273.

mental conceptions of justice with formal bright-line rules. There are always reasons for a delay, and some are better than others, but Oppelt suggests every delay, no matter how brief, which causes some prejudice and for which there was not a good justification, requires automatic dismissal. Such a bright-line test would lead to absurd results, and we reject it.

## D. Balancing

¶15 There have been several different formulations of what courts must balance in conducting a preaccusatorial delay analysis. We take this opportunity to clarify exactly what it is that must be balanced because our courts have engaged in three different interpretations: (1) the "reasons for the delay" are balanced with the prejudice to the defendant, *Schifferl*, 51 Wn. App. at 272; (2) "the State's interest" is balanced with the prejudice to the defendant, *State v. Frazier*, 82 Wn. App. 576, 589, 918 P.2d 964 (1996); and (3) "the delay" is balanced with the prejudice. *Salavea*, 151 Wn.2d at 139. This court's cases confirm that what are meant to be balanced are the reasons for the delay and the prejudice to the defendant caused by the delay.[7] *See Calderon*, 102 Wn.2d at 354 ("While we could conceive of a

---

[7] This court's case law is unambiguous, but the trial courts and Court of Appeals have, on occasion, balanced the State's interest *in prosecuting the defendant* against the prejudice to the defendant. For example, the Court of Appeals in this case properly asserts that " 'the State's reasons for the delay must be balanced against the resulting prejudice to the defendant.' " *Oppelt*, 2010 WL 1433480, at *4, 2010 Wash. App. LEXIS 734, at *16 (quoting *Schifferl*, 51 Wn. App. at 272). It continues:

> The court then properly balanced the prejudice to Oppelt and the State's interest in prosecution. The court noted the apparent ambivalence of the victim (now a teenager) about the prosecution, but observed that the State, not the victim, decides whether to prosecute, and that prosecution serves multiple societal purposes, including administration of justice, accountability of offenders, protection of society, and protection of other children from offenses "like those in this case."

2010 WL 1433480, at *5, 2010 Wash App. LEXIS 734, at *17-18. This approach is problematic because the State's reason for delay is not the same thing as the State's interest in prosecution. Here the trial court found that the reason for delay was the State's own negligence. The court thus should have weighed the prejudice to Oppelt and the State's negligence, not the State's interest in prosecution.

case in which an offender could successfully argue that the prejudice resulting from the loss of juvenile court jurisdiction *outweighed the State's reasons for the charging delay*, this is not that case." (emphasis added)); *Alvin*, 109 Wn.2d at 605 ("The final prong requires *weighing the State's reasons for delay* against the prejudice to Alvin in losing juvenile court jurisdiction." (emphasis added)); *State v. Lidge*, 111 Wn.2d 845, 852, 765 P.2d 1292 (1989) (*"The importance of these [investigative] delays outweighs* any prejudice that Eskridge suffered." (emphasis added)). The language "the State's interest" is simply imprecise. *Compare Alvin*, 109 Wn.2d at 604, *with Alvin*, 109 Wn.2d at 605.

¶16 Regardless of the precise label of the items to be balanced, the three-pronged test is best understood as an analytical tool to assist the court in answering the underlying question of whether a delay has resulted in a due process violation by violating fundamental conceptions of justice. The "prongs" should be approached with this principle in mind. The test, simply stated, is that (1) the defendant must show actual prejudice from the delay; (2) if the defendant shows prejudice, the court must determine the reasons for the delay; (3) the court must then weigh the reasons and the prejudice to determine whether fundamental conceptions of justice would be violated by allowing prosecution.[8] *See State v. Warner*, 125 Wn.2d 876, 890, 889 P.2d 479 (1995) ("The ultimate issue in balancing the interests is 'whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions." ' " (alteration in

---

[8] As the Fifth Circuit has noted, it does not really make sense to balance the reasons for delay *against* the prejudice. *Crouch*, 84 F.3d at 1512 (rejecting balancing prejudice against the reasons for delay because "[t]he items to be placed on either side of the balance . . . are wholly different from each other and have no possible common denominator that would allow determination of which 'weighs' the most"). While the point is well taken, this is perhaps too literal an interpretation of "balancing." It may be more accurate to think of the items as factors that must be considered in determining whether fundamental notions of justice are offended by prosecution. *See Calderon*, 102 Wn.2d at 352 ("in making its due process inquiry, the court must consider the reasons for the delay as well as the prejudice to the accused").

original) (quoting *Lidge*, 111 Wn.2d at 852 (quoting *Calderon*, 102 Wn.2d at 353))).

¶17 In this case, the judge's reasons for finding actual prejudice to the defendant were (1) "[A.R.'s great-grandmother's] inability to recall the type of lotion used and who applied it to the victim's genital area" and (2) "[A.R.'s great-grandmother's] medical condition that affects her memory."[9] CP at 94. This "precluded [Oppelt] from making a specific argument that we know it's this type of lotion and this type of lotion would definitely cause the redness [observed by the nurse who examined A.R.]." Report of Proceedings (RP) (June 5, 2008) at 34. Where the State's reason for delay is mere negligence, establishing a due process violation requires greater prejudice to the defendant than cases of intentional bad faith delay. *Moran*, 759 F.2d at 782. The loss of testimony about the exact lotion used is very slight prejudice. The defendant was not precluded from arguing that the lotion *might* have caused redness and swelling, and no other memory issues were identified as specifically problematic. In balancing, the court must determine if fundamental conceptions of justice would be violated by allowing the prosecution. The trial judge phrased this question as whether the defendant can show "that he cannot receive a fair trial." CP at 95. She properly answered that he could receive a fair trial. Her refusal to dismiss for preaccusatorial delay is upheld.

### DISMISSAL UNDER CrR 8.3(b)

¶18 A court "may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which

---

[9] A.R.'s great-grandmother suffers from hypothyroidism, and this has apparently affected her memory to some degree. However, she was able to remember "the victim's disclosure of the abuse, what the victim said, and that she took the victim to the hospital." CP at 94. The only memory issue noted by the judge other than the lotion was whether her husband was living with her at the time. *Id.* But the judge found that fact could "be established through other witnesses." *Id.*

materially affect[s] the accused's right to a fair trial."[10] CrR 8.3(b). These requirements are similar to the preaccusatorial delay requirements. First, the defendant must show arbitrary government action or misconduct, which may include simple mismanagement. *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997). Second, the defendant must show actual prejudice affecting his fair trial rights. *Id.* at 240. Unlike the due process balancing analysis, a trial court's denial of dismissal under CrR 8.3(b) is reviewed under an abuse of discretion standard. *State v. Hanna*, 123 Wn.2d 704, 715, 871 P.2d 135 (1994).

¶19 A preaccusatorial delay analysis under CrR 8.3(b) is substantially the same as the due process balancing analysis. CrR 8.3(b) may of course be used in situations other than preaccusatorial delay wherever there is government misconduct and prejudice to the defendant. Preaccusatorial delay can be understood as a subcategory of government misconduct under CrR 8.3(b).

¶20 Denying dismissal under CrR 8.3(b) was appropriate. As explained above, the judge correctly refused to dismiss the case under the due process balancing analysis.[11] Like the due process balancing test, even where a defendant shows some actual prejudice and State misconduct, the judge may

---

[10] The rule reads in full:

> **(b) On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

CrR 8.3. While the rule says "on motion of court," it is common practice for the defendant to make a motion to bring to the court's attention circumstances warranting dismissal, as was done here. *See State v. Sonneland*, 80 Wn.2d 343, 346-47, 494 P.2d 469 (1972).

[11] Judge Fair used the term "fair trial" instead of "fundamental conceptions of justice" and stated that she was balancing the State's interest in prosecution against the prejudice instead of the reason for the delay. However, it is clear from the transcript that she ultimately applied the correct test regardless of variations in terminology: "what it comes down to, I think, is can the defendant have a fair trial, and that's where we get into essentially the same test, in a way, as we do under [CrR]8.3(b). I think that really should be the bottom line for the Court." RP (June 5, 2008) at 37. We agree.

in her discretion refuse to dismiss under CrR 8.3(b) if the actual prejudice is slight and the misconduct is not too egregious. *See* CrR 8.3(b) (trial court "may" dismiss upon a showing of government misconduct and prejudice to the defendant); *see also Hanna*, 123 Wn.2d at 715 (trial court's decision under CrR 8.3(b) reviewed for abuse of discretion). Here, the judge correctly determined that Oppelt could receive a fair trial. The refusal to dismiss under CrR 8.3(b) was not an abuse of discretion.

CONCLUSION

¶21 We have established a three-part analytical framework for determining whether due process is violated by a preaccusatorial delay. First, the defendant must show actual prejudice; second, the court must determine the State's reason for delay; and third, the court must weigh the prejudice and the reason for delay. The purpose of the analytical framework is to assist the court in determining if fundamental conceptions of justice would be violated by allowing the prosecution. We reject both the State's and the defendant's contentions that once negligence is established as the reason for delay, the court can skip the balancing and weighing of the third prong, and either automatically deny dismissal or automatically dismiss. Employing the proper balancing test, we hold that Oppelt has not shown a due process violation. Finally, the preaccusatorial delay analysis under CrR 8.3(b) is similar to the due process balancing analysis. Here, the judge did not abuse her discretion by refusing to dismiss under CrR 8.3(b). We affirm the ultimate disposition of the Court of Appeals and uphold Oppelt's conviction.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

Reconsideration denied October 4, 2011.