IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46707-1-II |
| Respondent, | |
| v. | |
| ROBERT BURTON FALCONER, JR., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Robert Burton Falconer, Jr. appeals his jury trial convictions of three counts of unlawful delivery of a controlled substance, each with a school bus route stop sentencing enhancement, and two counts of unlawful possession of a controlled substance. We hold that (1) the trial court did not err when it refused to consider the pretrial *Knapstad*[1] motion to dismiss the sentencing enhancements because CrR 8.3(c)(3) precludes the trial court from dismissing sentencing enhancements unless it is also dismissing the underlying charges, (2) Falconer waived his legal financial obligation (LFO) argument by failing to challenge the LFOs at sentencing, (3) there was no double jeopardy violation, (4) Falconer waived his due process argument because he failed to raise the issue below, and (5) his ineffective assistance of counsel argument has no merit. Accordingly, we affirm.

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

FACTS

In controlled-buy operations on April 15, April 16, and May 1, 2014, a confidential informant (CI) purchased drugs from Falconer. Based on these controlled buys and controlled substances discovered upon Falconer's arrest,[2] the State charged Falconer with three counts of unlawful delivery of a controlled substance and two counts of unlawful possession of a controlled substance. It also alleged that Falconer had committed the three unlawful delivery offenses within a school bus route stop zone.

Before trial, Falconer filed a pro se[3] motion to dismiss the "school zone [e]nhancements," arguing that the drug transactions occurred in a private home when no minor children were present and was, therefore, not part of a "school zone" under the federal constitution. Clerk's Papers (CP) at 9. Citing a statutory affirmative defense to the enhancement, RCW 69.50.435(4),[4] the State responded that the trial court could not consider this pretrial motion because Falconer was raising

_____

[2] Falconer was arrested on May 7.

[3] Falconer was originally represented by counsel, but Falconer moved for new counsel. After the trial court denied this request, Falconer proceeded pro se with defense counsel as his stand-by counsel.

[4] RCW 69.50.435(4) provides in part,

> It is an affirmative defense to a prosecution for a violation of this section that the prohibited conduct took place entirely within a private residence, that no person under eighteen years of age or younger was present in such private residence at any time during the commission of the offense, and that the prohibited conduct did not involve delivering, manufacturing, selling, or possessing with the intent to manufacture, sell, or deliver any controlled substance in RCW 69.50.401 for profit. The affirmative defense established in this section shall be proved by the defendant by a preponderance of the evidence.

an affirmative defense that required the presentation of evidence. The trial court reserved ruling on the motion until after the parties had presented their evidence.

After the evidence was presented, neither party asked the trial court to address the motion to dismiss the enhancements. There were also no jury instructions or argument related to the affirmative defense.

The jury found Falconer guilty as charged. It also found that he had committed each of the unlawful delivery offenses within 1,000 feet of a school bus route stop.

At the September 2, 2014 sentencing hearing, the trial court imposed discretionary and nondiscretionary LFOs without specifically addressing Falconer's present or future ability to pay. Falconer did not object to the imposition of the LFOs or the trial court's failure to address his ability to pay. The judgment and sentence contains boilerplate language stating that the trial court had considered Falconer's ability to pay LFOs and found that he had the ability or likely future ability to pay.

At sentencing, Falconer asked for leniency because he had not intended to take the case to trial and only did so after his then-counsel had "actually opened the CI packet" without informing him (Falconer), apparently revealing the identity of the CI and precluding the State from making any more plea offers.[5] 2B Report of Proceedings (RP) at 403. The State responded that before counsel had opened the CI packet, Falconer "had at least . . . three to four opportunities to take advantage of a plea offer in this case and each time he changed his mind." 2B RP at 404. The State also commented that it had reviewed Falconer's jail calls and every time he contacted friends

---

[5] It appears that it was the prosecutor's policy to make any plea offers contingent on the defense not opening the CI packet and revealing the CI's identity.

or family "he was very adamant that he was not going to take any plea and he was going to go to trial on this." 2B RP at 404.

Falconer appeals his convictions, the sentencing enhancements, and his LFOs.

ANALYSIS

I. MOTION TO DISMISS SENTENCING ENHANCEMENTS

Falconer first argues that the trial court erred when it refused to consider his pretrial motion to dismiss the sentencing enhancements. We disagree.

A defendant may move before trial to dismiss a criminal charge for insufficient evidence to establish a prima facie case. RAP 8.3(c)(3). But RAP 8.3(c)(3), which sets out the procedures to be followed for a *Knapstad* motion,[6] specifically precludes the trial court from dismissing a sentencing enhancement or aggravating circumstance without also dismissing the underlying charge. *See also State v. Meacham*, 154 Wn. App. 467, 473-74, 225 P.3d 472 (2010). Because the trial court was not authorized to dismiss only the sentencing enhancements and Falconer did not move to dismiss the underlying charges, the trial court did not err in refusing to consider Falconer's pretrial motion to dismiss the sentencing enhancements.[7] Accordingly, this argument fails.[8]

---

[6] *See State v. Newcomb*, 160 Wn. App. 184, 188 n.2, 246 P.3d 1286 (2011) ("The procedure to be followed for *Knapstad* motions is delineated by CrR 8.3(c).").

[7] Although the trial court did not rely on CrR 8.3(c)(3) when it refused to consider the motion to dismiss, we may affirm the trial court on any ground supported by the record, including those not explicitly articulated by the trial court. *State v. Norlin*, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998).

[8] We also note that even if the trial court had considered this motion to dismiss it would not have been successful. To prove the affirmative defense, Falconer would have had to prove that the "prohibited conduct did not involve" delivering the controlled substance "for profit." RCW

## II. LFO Challenge Waived

Falconer next challenges his LFOs, arguing that the trial court failed to make the necessary findings on his ability to pay. He invites us to exercise our discretion and address this issue despite his failure to object to the LFOs at sentencing. We decline this invitation.

When an appellant fails to raise an issue below, we may refuse to review it. RAP 2.5(a). In *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015), our Supreme Court reaffirmed that appellate courts in this state may decline to review the imposition of discretionary LFOs where the defendant failed to object to the imposition of LFOs at sentencing.

In May 2013, we issued our opinion in *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded by* 182 Wn.2d 827, wherein we declined to review the trial court's imposition of discretionary LFOs because the defendant did not object at sentencing. Thus, by May 2013, defendants were on notice that they must object to the imposition of LFOs in order to preserve the error for appellate review. Because Falconer was sentenced in September 2014, well after May 2013, and he did not object to the trial court's imposition of LFOs at sentencing, we decline his invitation to review this issue for the first time on appeal. *See State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015).

## III. SAG

In his pro se SAG, Falconer claims violations of his double jeopardy and due process rights and ineffective assistance of counsel. These arguments either fail or were waived.

---

69.50.435(4). Not only did Falconer's motion fail to mention this element, Falconer testified that selling drugs was the "only option" he had for making an income. 2A RP at 350.

A.  No Double Jeopardy

Falconer argues that the three unlawful delivery of a controlled substance convictions violated double jeopardy.  This argument fails.

Any time a defendant violates the same statute multiple times, double jeopardy could attach.  *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998).  When faced with multiple violations of the same statute, we apply the "unit of prosecution" test to determine if there is a double jeopardy issue.  *Adel*, 136 Wn.2d at 634.  Under that test, we review the statute in question to determine the criminal conduct or unit of prosecution that the legislature intended to be a punishable act.  *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005).

"Although unit of prosecution cases are of constitutional dimension, they are resolved by questions of statutory interpretation and legislative intent."  *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 172, 12 P.3d 603 (2000).  "In determining legislative intent as to the unit of prosecution, we first look to the relevant statute.  The meaning of a plain, unambiguous statute must be derived from the statutory language."  *Tvedt*, 153 Wn.2d at 710-11.

RCW 69.50.401(1) provides, in part, that "it is unlawful for any person to . . . deliver . . . a controlled substance."  Thus, unlawful delivery of a controlled substance requires the State to prove that the defendant (1) delivered a controlled substance and (2) knew that the substance delivered was a controlled substance.  RCW 69.50.401(1); *State v. Evans*, 80 Wn. App. 806, 814 n.17, 911 P.2d 1344 (1996).  Given the language of the statute, it is clear that the legislature intended each separate delivery to be the unit of prosecution.  Because each of the deliveries here were on different days and each was a completed crime once the delivery occurred, the deliveries were sufficiently distinguishable to qualify as separate deliveries to avoid any double jeopardy

violation. *See State v. Allen*, 150 Wn. App. 300, 314, 207 P.3d 483 (2009) (no double jeopardy when defendant was charged with multiple violations of a no-contact order when contacts took place on different days). This argument fails.

## B. DUE PROCESS

Falconer next argues for the first time on appeal that "law enforcement['s]" failure to notify him of each charge when the crime was complete violated his right to due process. SAG (Apr. 20, 2015) at 2. Essentially, he is asserting a prosecutorial delay claim. Falconer has waived this issue because he did not object on this ground in the trial court and he fails to show, on this record, that this is a manifest constitutional error. *See* RAP 2.5(a)(3).

An "appellate court may refuse to review any claim of error [that] was not raised in the trial court." RAP 2.5(a). We may, however review an unpreserved error if the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'" *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

When asserting a prosecutorial delay claim, a defendant must first establish that the charging delay caused prejudice. *State v. Oppelt*, 172 Wn.2d 285, 290, 257 P.3d 653 (2011). If he meets that burden, the court then examines the reasons for the delay and balances the delay against the prejudice to the defendant to determine if the delay violated the fundamental conceptions of justice. *Oppelt*, 172 Wn.2d at 290 (quoting *State v. Salavea*, 151 Wn.2d 133, 139, 86 P.3d 125 (2004)). Because Falconer did not raise this issue in the trial court, there is nothing

in the record explaining the reason for delay. Thus, any potential due process violation was not manifest, and we hold that Falconer has waived this issue.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Falconer appears to assert that his appointed counsel provided ineffective assistance because he opened a CI packet without Falconer's knowledge, thereby depriving him of the possibility of reaching a plea bargain with the State. This argument fails on this record.

To establish ineffective assistance of counsel, Falconer must show that his counsel's representation was deficient and that this deficient representation was prejudicial. *State v. Strange*, 188 Wn. App. 679, 687-88, 354 P.3d 917 (quoting *McFarland*, 127 Wn.2d at 334-35), *review denied*, No. 91940-2 (Wash. Nov. 3, 2015). Falconer does not establish prejudice based on this record. Even assuming, but not deciding, that his counsel provided deficient representation when he opened the CI packet, Falconer does not show that the State would have offered him an acceptable plea if this had not occurred. Accordingly, this argument fails.

In summary, we hold that (1) the trial court did not err when it refused to consider Falconer's pretrial motion to dismiss the sentencing enhancements, (2) Falconer waived his LFO argument by failing to challenge the imposition of LFOs at sentencing, (3) there was no double jeopardy violation, (4) Falconer waived his due process argument because he failed to raise the

No. 46707-1-II

issue below, and (5) his ineffective assistance of counsel claim has no merit. Accordingly, we affirm Falconer's convictions, enhancements, and LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MAXA, J.