# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49749-2-II |
| Respondent, | |
| v. | |
| MORGAN BRICE WILLIAMS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Morgan Brice Williams was previously convicted of one count of first degree robbery in Washington for an October 2013 robbery and six federal crimes for five robberies and an attempted robbery in Oregon. In this case, he was convicted of two counts of first degree robbery for a September 2013 and a November 2013 robbery in Washington. Williams appeals his convictions for these two counts of first degree robbery, arguing that the trial court erred in denying his motion to dismiss the two charges because the preaccusatorial delay in charging him violated his due process rights and because the preaccusatorial delay in charging him amounted to governmental misconduct under CrR 8.3(b). We hold that Williams's due process rights were not violated by the delay in charging him with the September and November 2013 robberies and that the trial court did not abuse its discretion by denying his motion to dismiss under CrR 8.3(b).[1]

---

[1] Williams also asks that we refrain from awarding appellate costs against him. The State represents that it will not request appellate costs. Therefore, we accept the State's representation, and we deny an award of appellate costs to the State.

Williams makes a number of additional claims in his Statement of Additional Grounds for Review (SAG).[2] First, he claims that his due process rights were violated by the preaccusatorial delay in charging him with the September and November 2013 robberies. Second, he claims that governmental misconduct occurred when the federal prosecutor did not include the September and November 2013 robbery charges when engaging in plea negotiations related to the six Oregon federal charges and the October 2013 Washington robbery. Third, he claims that he received ineffective assistance of counsel when his prior counsel failed to include the September and November 2013 robberies in the 2014 plea agreement. Fourth, he claims that he received ineffective assistance of counsel when his trial counsel did not more vigorously argue that the preaccusatorial delay was improper. Fifth, he claims that law enforcement violated his Fifth and Sixth Amendment rights when he was interrogated in prison. Sixth, he claims that he received ineffective assistance of counsel when he elected to have a bench trial on stipulated facts for the September and November 2013 robberies. Seventh, he claims that insufficient evidence supports his convictions for the September and November 2013 robberies. Eighth, he claims that his successive prosecutions require reversal. Ninth, he makes several other claims that his convictions should be reversed because of sentencing entrapment, double jeopardy, being forced to choose between two distinct rights, misrepresentation, conflict of interest, being denied informed consent, deliberate indifference, and violations of equal protection. None of the issues raised in Williams's SAG merit reversal.

Consequently, we affirm.

---

[2] RAP 10.10.

FACTS

Between September 17, 2013, and February 14, 2014, Williams robbed three banks in Washington, as well as five banks in Oregon, and he attempted to rob an additional bank in Oregon. Each of the robberies were carried out in a similar manner—by a person who wore baggy clothing and presented a demand note to a teller. The three Washington robberies took place in Clark County and occurred in September, October, and November of 2013. Vancouver Police Department Detective Lawrence Zapata investigated the September 2013 robbery. Vancouver Police Department Detective Barbara Knoeppel investigated the October 2013 robbery. The Clark County Sheriff's Department investigated the November 2013 robbery. The Federal Bureau of Investigation investigated the six crimes in Oregon.

During his investigation, Detective Zapata viewed surveillance footage from the September 2013 robbery, but he was unable to identify the robber from the footage. Detective Zapata also examined the demand note used by the robber. Although there was an impression on the demand note from the September 2013 robbery, the forensics lab was unable to identify the robber without a side-by-side comparison of the robber's fingertip and hand prints.

Law enforcement officials released information to the public asking for tips on all of the robberies and the attempted robbery. A citizen identified Williams as a potential suspect. During the course of his investigation, Detective Zapata suspected that Williams was the person who had committed the September 2013 robbery. However, Detective Zapata did not refer charges against Williams to the Clark County prosecuting attorney for either the September or November 2013 robberies because he did not believe he had sufficient evidence for an arrest warrant or for successful prosecution.

Detective Knoeppel was able to positively identify Williams as the man who committed the October 2013 robbery after several bank employees identified him as the robber. Detective Knoeppel wrote a probable cause statement for Williams's arrest for the October 2013 robbery that noted that Williams was a suspect in the September and November 2013 robberies. Williams was arrested and charged for the October 2013 robbery. Williams invoked his right to remain silent; thus, law enforcement could not question Williams.

In 2014, Williams pleaded guilty to the October 2013 robbery in Clark County Superior Court. He also pleaded guilty to the six Oregon federal charges in the U.S. District Court of Oregon. Williams's attorney negotiated a plea agreement with the federal authorities and the Clark County prosecutor for a concurrent sentence for the October 2013 Washington conviction and the six Oregon federal convictions. The U.S. District Court sentenced Williams to 60 months of confinement for the six federal crimes and the Clark County Superior Court sentenced him to 36 months for the October 2013 robbery, with both sentences to be served concurrently. Although the prosecutor and defense counsel each had a copy of Detective Knoeppel's probable cause statement that had named Williams as a suspect in the September and November 2013 robberies, neither crime was included in the 2014 plea agreement.

Between 2014 and 2015, Detective Zapata was transitioning between units within the police department. Although he was aware that Williams had been apprehended, he did not interview Williams and did not seek a warrant for Williams's fingerprints. In late 2015, Detective Zapata transferred the investigation of the September 2013 robbery to Vancouver Police Department Detective Tom Topaum. Detective Topaum later secured a search warrant for Williams's fingerprints.

In February 2016, Detectives Topaum and Zapata interviewed Williams in prison while he was serving his sentences for the October 2013 robbery and the six Oregon federal crimes. Detective Zapata asked Williams if he was the person who had committed the September and November of 2013 robberies. Williams confessed that he was the robber.

On March 7, the State charged Williams with two counts of first degree robbery for the September and November 2013 robberies. Williams moved to dismiss the charges under CrR 4.3 and CrR 8.3, and the trial court conducted an evidentiary hearing on the motion. Williams argued that the State was aware that he was the only suspect in the September and November 2013 robberies and that he had been positively identified as the suspect in the October 2013 Clark County robbery and in the six Oregon federal crimes. Thus, Williams contended that the delay in charging him breached the 2014 plea agreement and also violated his due process rights. Williams's prior counsel and the prosecutor in Williams's October 2013 robbery case each filed affidavits stating that they were not aware of other possible charges for the September or November 2013 robberies when they negotiated the 2014 plea agreement.

The trial court found that both the State and Williams's prior counsel should have known that Williams was a suspect in the September and November 2013 robberies because the robberies were included in Detective Knoeppel's probable cause statement. However, the trial court also found that at the time the charges were brought against Williams for the October 2013 robbery, there had not been a positive identification of Williams as the robber in either the September or November 2013 robberies, and there was no physical evidence linking him to the September or November 2013 robberies. Thus, the trial court denied Williams's motion to dismiss.

5

Williams elected to have a bench trial on stipulated facts for the September and November 2013 robberies. Prior to trial, the court held a lengthy colloquy with Williams to ensure that he was aware of his right to a jury trial and that he understood the meaning of a bench trial on stipulated facts. Williams acknowledged that he was aware of his rights, signed each page of the stipulated facts, signed the stipulated agreement, and agreed to waive his right to a jury trial. The trial court found Williams guilty of both the September and November 2013 robberies and calculated his offender score as a 9 plus. The trial court imposed a low-end standard range sentence of 129 months to run concurrently with the sentences imposed for the October 2013 robbery conviction and the six federal Oregon convictions. Williams appeals.

ANALYSIS

I. DUE PROCESS—PREACCUSATORIAL DELAY

Williams argues that the trial court erred in denying his motion to dismiss his two first degree robbery charges because the preaccusatorial delay in charging him violated his due process rights. We disagree.

We review de novo whether due process rights are violated by a preaccusatorial delay. *State v. Oppelt*, 172 Wn.2d 285, 290, 257 P.3d 653 (2011). To show that the delay violated due process: (1) the defendant must show that he was actually prejudiced by the delay; (2) if the defendant shows prejudice, the court must consider the reasons for the delay; and (3) "the court must then weigh the reasons and the prejudice to determine whether fundamental conceptions of justice would be violated by allowing prosecution." *Oppelt*, 172 Wn.2d at 295.

A. ACTUAL PREJUDICE

Williams argues that he suffered actual prejudice as a result of the delay in charging him with the September and November 2013 robberies because he lost the opportunity to have all three Washington robberies included in the 2014 plea agreement. We agree.

Williams negotiated a plea agreement with the federal prosecutor and the Clark County prosecutor for concurrent sentences for the six Oregon federal crimes and the October 2013 Washington robbery. The superior court calculated Williams's offender score as 0 when it sentenced him for the October 2013 robbery. If the State had filed charges for the September and November 2013 robberies at the same time as it filed the October 2013 robbery charge, Williams would have had an offender score of 5.[3] With an offender score of 5, Williams would have faced a standard sentencing range of 57-75 months. *See* RCW 9.94A.510.

However, due to the delay in filing charges for the September and November 2013 robberies, Williams's offender score was 9 plus when he was convicted of the September and November 2013 robberies. Based on an offender score of 9 plus, the trial court sentenced Williams to a low-end standard range sentence of 129 months. As a result, Williams received a longer sentence than if he had been sentenced for the September and November 2013 convictions at the same time as the October 2013 and the six Oregon federal convictions. *See* RCW 9.94A.510. Because Williams received a longer sentence, he has shown that he was actually prejudiced by the preaccusatorial delay in charging him for the September and November 2013 robberies.

---

[3] Williams would have had one point for the first degree robbery charge related to the October 2013 robbery and two points for each of the first degree robbery charges for the September and November 2013 robberies. *See* RCW 9.94A.525.

B. REASONS FOR THE DELAY

Because we determine that Williams has demonstrated actual prejudice as a result of the delay in charging him, we next consider the reasons for the delay. *Oppelt,* 172 Wn.2d at 295.

At the time the State charged Williams with the October 2013 robbery, Detective Zapata did not have probable cause that Williams committed the September and November 2013 robberies. Further, Williams had not been positively identified as the robber and there was no physical evidence linking Williams to either the September or the November 2013 robberies. As a result, the State did not have sufficient evidence to arrest or charge Williams with the September and November 2013 robberies at the time it charged him with the October 2013 robbery.

C. BALANCING TEST

We next balance the reasons for the delay against the prejudice to the defendant to determine "whether fundamental conceptions of justice would be violated by allowing prosecution." *Oppelt*, 172 Wn.2d at 295.

As discussed above, the State delayed charging Williams for the September and November 2013 robberies because it did not have sufficient evidence to either arrest or charge him for the crimes. The State has an interest in effectively prosecuting crimes when sufficient evidence supports the filing of charges. These interests promote judicial economy and just prosecutions. Williams was prejudiced by receiving a longer sentence than he would have received if the State had charged him with the September, October, and November 2013 robberies at the same time. However, Williams was aware of the September and November 2013 robberies at the time that he was sentenced for the October 2013 and the six Oregon federal robberies, and he chose to enter into a plea agreement without including the September and November 2013 robberies.

Ultimately, the State's interest in filing charges that it can support with sufficient evidence and its restraint from filing cases it cannot support, outweighs any prejudice that Williams suffered by receiving a longer sentence. Therefore, we hold that the preaccusatorial delay in charging Williams with the September and November 2013 robberies did not violate the fundamental conceptions of justice. Thus, we hold that Williams's due process claim fails and that the trial court did not err by denying Williams's motion to dismiss for preaccusatorial delay.

## II. CrR 8.3(b)

Williams also argues that the trial court erred when it denied his motion to dismiss his charges under CrR 8.3(b) because the preaccusatorial delay in charging him amounted to governmental misconduct. We disagree.

### A. LEGAL PRINCIPLES

We review a trial court's decision on a CrR 8.3(b) motion to dismiss for an abuse of discretion. *Oppelt*, 172 Wn.2d at 297. A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or untenable reasons. *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).

CrR 8.3(b) states:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

A preaccusatorial delay analysis under CrR 8.3(b) is substantially similar to the preaccusatorial delay due process balancing analysis. *Oppelt*, 172 Wn.2d at 297. To grant a CrR 8.3(b) motion to dismiss, the trial court must find (1) arbitrary action or governmental misconduct and (2)

9

prejudice to the defendant's right to a fair trial. *Brooks*, 149 Wn. App. at 384. The governmental

misconduct at issue need not be evil or dishonest—simple mismanagement is sufficient. *Brooks*,

149 Wn. App. at 384. The prejudice to the defendant must have materially affected his or her right

to a fair trial. *Brooks*, 149 Wn. App. at 384. Dismissal under CrR 8.3 is an extraordinary remedy

that the trial court should use only as a last resort. *Brooks*, 149 Wn. App. at 384.

B. GOVERNMENTAL MISCONDUCT

Williams argues that the preaccusatorial delay in filing charges for the September and

November 2013 robberies constitutes governmental misconduct. Williams cites to no law

supporting his argument that a prosecutor must be aware of all possible charges and charge all

possible crimes when a defendant is charged with a separate offense.

Here, the trial court concluded that there was not sufficient evidence to support an arrest

warrant or a successful prosecution against Williams for the September and November 2013

robberies at the time the State charged him with the October 2013 robbery. Because there was not

sufficient evidence to support charges for the September and November 2013 robberies, the

preaccusatorial delay in charging Williams did not constitute governmental misconduct.

Accordingly, the trial court's decision to deny Williams's motion to dismiss under CrR 8.3(b) was

based on tenable grounds and reasons. Therefore, we hold that the trial court did not abuse its

discretion by denying the motion.

SAG

Williams raises a number of issues in his SAG. First, we hold that Williams's due process

rights were not violated by the preaccusatorial delay in charging him for the September and

November 2013 robberies. Second, because Williams's claim that the federal prosecutor

intentionally excluded the September and November 2013 robberies relies on information outside of the record, we decline to consider the issue. Third, because Williams's claim of ineffective assistance of counsel related to the 2014 plea agreement relies on matters outside of the record, we decline to consider the issue. Fourth, we hold that Williams did not receive ineffective assistance of counsel because his trial counsel did argue that the charges for the September and November 2013 robberies should be dismissed because of the preaccusatorial delay in charging Williams. Fifth, because Williams's Fifth and Sixth Amendment claims are not supported by sufficient argument, we refrain from addressing them. Sixth, we determine that because Williams knowingly, intelligently, and voluntarily waived his right to a jury trial, he did not receive ineffective assistance of counsel when Williams elected to have a bench trial on stipulated facts. Seventh, we determine that sufficient evidence supports Williams's convictions for the September and November 2013 robberies. Eighth, because the successive prosecution doctrine does not apply to this case, we hold that this claim fails. Ninth, we decline to review Williams's additional claims under RAP 10.10(c) because Williams fails to inform us of the nature and occurrence of the alleged errors.

## I. PREACCUSATORIAL DELAY

Williams repeats his claim on direct appeal that his due process rights were violated by the preaccusatorial delay in charging him for the September and November 2013 robberies. We hold that this claim fails for the same reasons set forth above.

## II. FEDERAL PROSECUTOR MISCONDUCT

Williams claims that the September and November 2013 robberies were originally part of the federal prosecution against him for the six Oregon federal crimes and that the charges for the

September and November 2013 robberies in Washington were intentionally dropped to allow the State to charge him for the Washington crimes at a later time. However, nothing in the record supports Williams's claim. The record before this court includes only transcripts and clerk's papers relating to the September and November 2013 robberies. Therefore, the record is insufficient for this court to review Williams's claim, and we decline to consider this issue. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL—2014 PLEA AGREEMENT

Williams claims that he received ineffective assistance of counsel when his prior counsel said he would include the September and November 2013 robberies in the 2014 plea agreement, but ultimately did not include them.

We review a claim of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, Williams must show both that (1) defense counsel's performance was deficient and (2) the deficient performance prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Performance is deficient if, after considering all the circumstances, it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the outcome of the proceedings would have been different. *Grier*, 171 Wn.2d at 34.

The record before this court includes only transcripts and clerk's papers relating to the September and November 2013 robberies. There is no record of discussions about the 2014 plea agreement before this court, and Williams has not filed any declarations to support this claim.

Because the record is insufficient, we decline to consider this issue. *McFarland*, 127 Wn.2d at 335.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL—PREACCUSATORIAL DELAY

Williams claims that he received ineffective assistance of counsel because his trial counsel did not fully argue that the preaccusatorial delay in charging him for the September and November 2013 robberies violated his due process rights.  Specifically, he claims that his counsel only "briefly touch[ed] upon these issues, [but] he did so in an ambiguous manner."  SAG at 10.

The record does not support Williams's claim.  The record shows that his trial counsel filed a motion to dismiss based upon the State's charging delay, and the trial court held a lengthy hearing on the matter and ultimately denied the motion.  Thus, Williams has not shown that his counsel's performance was deficient.  Therefore, we hold that this claim fails.

## V.  FIFTH AND SIXTH AMENDMENT RIGHTS

Williams next claims that Detectives Topaum and Zapata violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel when they interrogated him about the September and November 2013 robberies while he was in prison.  Specifically, he argues that the detectives waited until the federal prosecution for the six Oregon crimes and the state prosecution for the October 2013 robbery were resolved and his counsel had withdrawn from the case, and "then went to question and interrogate him on the 2 counts the federal prosecutor dropped from their indictment."  SAG at 12.

Here, although Williams claims that his Fifth and Sixth Amendment rights were violated, he does not provide sufficient argument as to how those specific rights were violated or show how he was prejudiced at trial.  A party who raises constitutional issues must present considered

arguments to this court. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *Johnson*, 119 Wn.2d at 171 (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)).

Further, under RAP 10.10(c), "the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." Because Williams fails to inform us of the nature and occurrence of the alleged errors, we do not address them. RAP 10.10(c); *State v. Brown*, 159 Wn. App. 366, 374, 245 P.3d 776 (2011).

## VI. RIGHT TO A JURY TRIAL

Williams also claims that his trial counsel deprived him of the right to a jury trial when Williams elected to have a bench trial based on stipulated facts for the September and November 2013 robbery charges. We disagree because Williams waived his right to a jury trial.

A defendant's waiver of a jury trial must be made knowingly, voluntarily, and intelligently. *State v. Frawley*, 181 Wn.2d 452, 461, 334 P.3d 1022 (2014). "A waiver of the right to a jury trial does not require a colloquy or on-the-record advice as to the consequences of a waiver, but it does require an affirmative and unequivocal personal expression of waiver from the defendant." *Frawley*, 181 Wn.2d at 461-62.

Here, the trial court asked Williams multiple times if he was certain that he wanted to waive his right to a jury trial and read over the waiver that Williams had already signed:

> [COURT]: And a couple things, Mr. Williams, I want to touch with you before we go forward this morning. I got word that you want to have a bench trial on the stipulated facts of this case, is that true?

14

[DEFENDANT]: Yes, Your Honor.

[COURT]: And you understand that you do have the right to have a jury trial. We would have 12 people from the community selected by a process called voir dire and you would have a right to challenge up to six jurors, potential jurors, to have a 12-person jury sit over there, hear the evidence from the witness stand, subject to cross-examination by your attorney, and you'd have a chance to call witnesses as well. And you want to waive that right to have a jury hear the case, is that right?

[DEFENDANT]: Yes, Your Honor.

[COURT]: And have you had any experience with jury trials before?

[DEFENDANT]: No, Your Honor.

[COURT]: No? And you have had a chance to talk to your attorney about the pluses and minuses of doing a bench trial versus a jury trial?

[DEFENDANT]: Yes, Your Honor.

[COURT]: The only person that's going to make the decision in this case for guilt or innocence is going to be me. And you are comfortable going forward in that regard as well?

[DEFENDANT]: Yes, Your Honor.

[COURT]: I had the attorneys present to you a waiver of jury trial. This form here. Did you get a chance to look at this form?

[DEFENDANT]: Yes, Your Honor.

[COURT]: And you read and write the English language?

[DEFENDANT]: Yes, Your Honor.

[COURT]: And it says that, "I understand that under the Constitutions of the United States and the State of Washington, the Statutes of the State of Washington and Criminal Rules for Superior Court, I am entitled to a trial by a jury of my peers who would determine my guilt or innocence. I do hereby voluntarily and with knowledge of the above rights waive my right to a jury trial and consent to the trial of this case by the Court," meaning the Judge.

[DEFENDANT]: Yes, Your Honor.

[COURT]: And you've signed that?

[DEFENDANT]: Yes, Your Honor.

Verbatim Report of Proceedings (VRP) at 53-55.

Given the trial court's colloquy, it is clear that Williams knowingly, intelligently, affirmatively, and unequivocally waived his right to a jury trial. *See Frawley*, 181 Wn.2d at 461-62. Therefore, his claim fails.

15

VII. SUFFICIENCY OF THE EVIDENCE

Williams claims that insufficient evidence supports his convictions for the September and November 2013 robberies. Specifically, he argues that reversal is required because "[t]here was no weapon or implied use of a weapon in his crimes, there was no violence or threat of violence in his crimes; and there was literally no evidence to the contrary." SAG at 17.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any reasonable juror to find the essential elements of the crime beyond a reasonable doubt. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence. *Condon*, 182 Wn.2d at 314. Circumstantial and direct evidence are considered equally reliable. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). We defer "to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

In regard to the September and November 2013 robberies, Williams was charged with violating RCW 9A.56.200(1)(b), which provides that a person is guilty of robbery in the first degree if he or she "commits a robbery within and against a financial institution."

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.190.

As stated above, Williams waived his right to a jury trial when he stipulated to the facts and elected to have a bench trial. The trial court again had a colloquy with Williams:

> [COURT]: I don't know whether it's important enough to put on this waiver of jury trial, that it's not just a waiver of jury trial, but stipulation as to the facts. Did you get a chance to look at this drafted stipulation?
> [DEFENDANT]: Yes, Your Honor.
> [COURT]: And if you haven't, I'll give you time this morning to read through it with your attorney. Did you actually read through each one of these pages?
> [DEFENDANT]: Yes, Your Honor.
> [COURT]: Okay. And is this the one we're going to file for the Court?
> [DEFENSE COUNSEL]: That is correct, Your Honor.
> [COURT]: Okay. And I know, [Williams], you signed this. I'm going to hand this back down and I want [Williams] to initial the bottom of each page so that I'm comfortable that you've gone through each page and not just to the signing page.

VRP at 55.

After this colloquy, Williams signed each page of the stipulation. The first stipulated fact relates to the September 2013 robbery and states that Williams walked into a financial institution and

> presented a demand note to [a teller] and said that he wanted "all the money in the till." [The teller] was very afraid and believe[d] that she may faint due to a preexisting heart condition. Any reasonable person would have known that presenting a demand note to a bank teller would place the teller in fear of injury. [The teller] stated [Williams] also implied that he had a gun by placing his hand inside the pocket of his hooded sweatshirt. [Williams] denies doing this. [The teller] took money from her till and gave it to the defendant.

Clerk's Papers (CP) at 34. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found that Williams unlawfully took personal property from the person of another against that person's will by the threatened use of immediate force, violence, or fear of injury to that person. Thus, Williams's conviction for first degree robbery relating to the September 2013 robbery was supported by sufficient evidence.

The second stipulated fact relates to the November 2013 robbery and states that Williams walked into a financial institution and

> presented a demand note to [the teller] that read "Top Drawer, No die packs, No tracking devise, Small bills." [The teller] was placed in fear by [Williams's] actions and her "heart was racing." Any reasonable person would have known that presenting a demand note to a bank teller would place the teller in fear of injury. [The teller] took money from her till and gave it to [Williams].

CP at 35. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found that Williams unlawfully took personal property from the person of another against that person's will by the threatened use of immediate force, violence, or fear of injury to that person. Thus, Williams's conviction for first degree robbery relating to the November 2013 robbery was supported by sufficient evidence. Therefore, we hold that Williams's claim that insufficient evidence supports his convictions fails.

## VIII. SUCCESSIVE PROSECUTIONS

Williams also claims that he was prosecuted in violation of the successive prosecutions doctrine. However, this doctrine is inapplicable because it bars successive prosecutions by the same sovereign for the same conduct. *State v. Ivie*, 136 Wn.2d 173, 176, 961 P.2d 941 (1998). At issue are the September and November 2013 robberies, and the State had not previously prosecuted Williams for those crimes. Thus, this claim fails.

## IX. ADDITIONAL SAG CLAIMS

Williams makes several additional claims that his convictions should be reversed because of sentencing entrapment, double jeopardy, being forced to choose between two distinct rights, misrepresentation, conflict of interest, being denied informed consent, deliberate indifference, and violations of equal protection. He does not further explain these alleged errors in his SAG. As a

18

result, Williams's SAG fails to inform us of the nature and occurrence of the alleged errors.  RAP 10.10(c).  Accordingly, we do not address them.  *Brown*, 159 Wn. App. at 374.

CONCLUSION

We hold that Williams's due process rights were not violated by the delay in charging him with the September and November 2013 robberies and that the trial court did not abuse its discretion by denying his motion to dismiss under CrR 8.3(b).  We also hold that Williams's SAG claims fail.  Thus, we affirm his convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.